509 P.2d 1070

The STATE of Arizona ex rel. Dennis DeCONCINI, Pima County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, IN AND FOR PIMA COUNTY, the Honorable Joe Jacobson, a Judge thereof, Respondents,

and

Nazareno FRANZE, Real Party In Interest.

William J. GILKINSON et al., Petitioners,

v.

SUPERIOR COURT of the State of Arizona, IN AND FOR PIMA COUNTY, the Honorable Joe Jacobson, a Judge thereof, Respondents,

and

Nazareno FRANZE, Real Party In Interest.

Nos. 2 CA–CIV 1433, 2 CA–CIV 1435.

Court of Appeals of Arizona,
Division 2.

May 18, 1973.

Rehearing Denied June 19, 1973.

Review Denied July 17, 1973.

**34**

----◆----

Dennis DeConcini, Pima County Atty., by Gerard R. O'Meara, Deputy County Atty., Tucson, for petitioner State of Arizona.

Quigley & Quigley, P. C., by James E. Quigley, Tucson, for petitioners Gilkinson, McGuire, Mejia, Haury and Bowman.

Barber, Haralson, Giles & Moore, P. C., by Robert O. Barber, Jr., Tucson, for real party in interest.

HOWARD, Judge.

These two special actions present the same issue—Did the respondent court exceed its jurisdiction in a pending criminal case by ordering that all Internal Affairs Records of the Tucson Police Department concerning four police officers be turned over to the respondent judge for an *in camera* inspection? Since appellate intervention is required, we assume jurisdiction.

The real party in interest was charged ˙ by indictment with the offense of obstructing justice and was tried thereon in February, 1973. This trial resulted in a hung jury and the case has been reset for trial on May 22, 1973. About a month after termination of the first trial, real party in interest filed a "motion to produce and inspect and motion for disclosure" requesting that he and his counsel be permitted to inspect and copy all Internal Affairs Records of the Tucson Police Department concerning four named police officers, witnesses for the prosecution.

In his supporting memorandum, defense counsel pointed out that the charge of obstructing justice was based upon the defendant allegedly hitting a police officer; that witnesses to the incident had informed counsel that the police officers assaulted the defendant; that counsel had learned there had been investigations by the Internal Affairs Division of the various police officer witnesses in the case; and that defendant was seeking disclosure of these investigations for possible impeachment of these police officers. Counsel also stated that prior investigations of the four officers would be material and relevant and admissible for impeachment purposes to show their bias, hostility, prejudice or motive. The defense motion was opposed by the prosecution and after a hearing thereon, the court ordered as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that all Internal Affairs records of the Tucson Police Department concerning police officers Ernest Mejia, Delbert Haury, Patrick McGuire and Daniel Bowman be produced and surrendered to this Court in their entirety for an *in camera* inspection and determination by this Court as to what if any records are properly discoverable. After the Court makes its determination defense counsel will be permitted to view or copy any records which the Court has determined are properly discoverable. The records will then be returned to the Tucson Police Department."

In a lengthy memorandum opinion, the respondent judge explained the reasons for his ruling. He concluded that he had "a duty to *in camera* inspect all of the Internal Affairs Division records relating to these particular officers to determine if any of it would be material to the defense of this case." The opinion also stated:

". . . If any records are found to have materiality or possible usefulness to

the defendant, they will be turned over to the defendant for him to determine what will be useful to his defense."

We agree with petitioners that the requested discovery does not fall within the ambit of Rule 195, Rules of Criminal Procedure, 17 A.R.S. However, it is well settled that superior court judges have inherent power, in the exercise of their sound discretion, to grant discovery not covered by this rule when necessary to due administration of justice. State ex rel. Corbin v. Superior Court of Maricopa County, 103 Ariz. 465, 445 P.2d 441 (1968); State ex rel. Helm v. Superior Court of Cochise County, 90 Ariz. 133, 367 P.2d 6 (1961); State ex rel. Mahoney v. Superior Court of Maricopa County, 78 Ariz. 74, 275 P.2d 887 (1954); Zarate v. Jennings, 17 Ariz.App. 401, 498 P.2d 475 (1972). In the recent decision of State v. Ford, 108 Ariz. 404, 499 P.2d 699 (1972), Chief Justice Hays speaking for our Supreme Court made the following statement concerning the exercise of judicial discretion as to the granting of a bill of particulars:

"We believe that a trial court should exercise its discretion in favor of seeing that the accused is furnished with every fact necessary to prepare the best possible defense. The modern trend in discovery proceedings is to have the winner determined by the facts, rather than by which side is the most ingenious in 'playing the game.' " 108 Ariz. at 409, 499 P.2d at 704.

Although we are of the opinion that the unusual circumstances of this particular case justify allowance of *some* disclosure of *some* records of the Internal Affairs Division, we also find merit in the petitioners' challenge of the subject order.

As noted above, the real party in interest's motion was directed to *all* Internal Affairs Records concerning the specified police officers and the respondent court ordered production of *all* such records. Exercise of judicial discretion, however, is circumscribed by the reasonableness of the request since mere "fishing expeditions" are not to be countenanced. State ex rel. Corbin v. Superior Court, supra. There are many matters contained in the files of these officers which have absolutely no bearing on the issues in this case. However, it is apparent that the crucial issue upon which the defendant's guilt or innocence may hinge is whether one or more of the officers was the aggressor in the incident which gave rise to the criminal charge. The defendant's version, if believed by the trier of fact, would afford him a defense. Therefore, had prior complaints been made concerning assaultive conduct on the part of these officers which resulted in departmental sanctions or determinations unfavorable to the officers, the defendant certainly would be entitled to cross-examine the officers concerning same. State v. Cadena, 9 Ariz.App. 369, 452 P.2d 534 (1969). Furthermore, as we stated in State v. Taylor, 9 Ariz.App. 290, 451 P.2d 648 (1969):

". . . But, when the misconduct bears an inferential connection with a factual issue in the case, the consideration of the discomfiture of the witness must yield to the ascertainment of the truth, at least to the extent of permitting cross-examination, [citation omitted], and, if the inferential connection is sufficiently strong, to the extent of permitting independent evidence of the conduct. [citation omitted]." 9 Ariz.App. at 294, 451 P.2d at 652.

In the case of City of Phoenix v. Peterson, 11 Ariz.App. 136, 462 P.2d 829 (1969), Division One of this court approved examination of that portion of an officer's personnel file pertaining to disciplinary proceedings. Although it is true that *Peterson* was a civil case, we believe that the court's rejection of the claim of privilege asserted therein is equally applicable here:

". . . We note in that regard that plaintiffs' counsel has indicated before us that plaintiffs are not interested in ascertaining the identity of any complainants, but only the fact, nature and

outcome of disciplinary proceedings. Given these circumstances, we find commendable the result reached in Minneapolis Star and Tribune Co. v. State, 282 Minn. 86, 163 N.W.2d 46 (1968), cited by petitioners, in which it was held that one seeking information concerning disciplinary proceedings involving a doctor before a state medical board could have access to records showing the cause, nature and disposition of the disciplinary proceedings, but not to materials showing confidential communications from patients or other informants or to board minutes reflecting board deliberations. The trial judge was given authority to supervise the inspection in the event of any dispute. We see no reason why the same principles could not be applied here, affording the City the right to delete in some manner any references to confidential communicants, and if necessary other irrelevant portions of the attached personal [sic] file, subject to court supervision in the event of dispute." 11 Ariz.App. at 140, 462 P.2d at 833.

■ The requested inspection was directed to records in the possession of a third person rather than in the possession of the prosecution, but we do not believe such factor bars inspection. State v. Streett, 11 Ariz.App. 211, 463 P.2d 106 (1969), review denied 108 Ariz. 399, 499 P.2d 155 (1972); Engstrom v. Superior Court, In and For County of Alameda, 20 Cal.App.3d 240, 97 Cal.Rptr. 484 (1971). None of the parties to these proceedings has cited authority from this jurisdiction or others which is on point. Our independent research, however, has disclosed a recent decision of the Oregon Court of Appeals, State v. Fleischman, 94 Adv.Sh. 801, 495 P.2d 277 (Or.App.1972), which addressed itself to the problem at hand.

In *Fleischman*, the defendant was convicted of assault with intent to kill a police officer who had chased the defendant following an alleged traffic violation. A former police officer was allowed to testify that the defendant was the aggressor in a 1964 incident in which he had a physical encounter with the defendant when stopped for an alleged traffic offense. Defense counsel were denied access to this officer's personnel record after having stated they believed the records would reveal that the officer had been involved and had been the aggressor in other violent encounters while making arrests and that the jury could infer therefrom that the officer, rather than the defendant, was the aggressor in the 1964 incident. The trial judge examined the officer's file *in camera* and denied the defense request to view the file because he concluded there was nothing in the file which would provide any material for the defense relative to the question of possible over-aggressiveness by the officer in other situations. After considering the file which was included in the record on appeal as a court exhibit, the appellate court made the following statement which we deem pertinent:

"We have examined the subject file and do not agree with the conclusion of the trial judge that none of the material contained therein would have been of assistance to defendant's attorneys in testing on cross-examination the credibility of ex-Officer Loos's testimony. The state having been permitted to show in detail the two prior incidents where defendant had allegedly demonstrated hostility toward the police, should not have been allowed to block inspection of the personnel file and thus hamper defendant's efforts to explore and test fully the accuracy and reliability of the prosecution's evidence thereof.

The state cannot refuse to disclose this evidence on the grounds that it was in the possession of an agency other than the prosecutor's office, where, as here, the prosecutor knew of its existence. [citations omitted]

Nor can the state invoke the privilege claim . . . which it attempted to make in the trial court [footnote omitted]. When the state chooses to prose-

cute an individual for crime, it is not free to deny him access to evidence that is relevant to guilt or innocence, even when otherwise such evidence is or might be privileged against disclosure. [citations omitted] It follows, therefore, that the refusal of the trial judge to allow defense counsel to examine the subject file prior to cross-examining ex-Officer Loos was reversible error.

We do not mean to suggest that criminal defendants can routinely have access to the personnel records of policemen who testify against them. We only hold that on this unusual record ex-Officer Loos's records contained evidence 'which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence.' [citations omitted]" 495 P.2d at 282.

We believe that the decision we reach here is consonant with the philosophy of our new Rules of Criminal Procedure, promulgated by our Supreme Court on April 17, 1973, to become effective September 1, 1973. Rule 15.1(e), thereof, specifically provides for disclosure under circumstances such as we have here:

"Upon motion of the defendant showing that he has substantial need in the preparation of his case for additional material or information not otherwise covered by Rule 15.1, and that he is unable without undue hardship to obtain the substantial equivalent by other means, the court in its discretion may order any person to make it available to him. The court may, upon the request of any person affected by the order, vacate or modify the order if compliance would be unreasonable or oppressive."

■ There is no question that if defendant Franze could establish other incidents of "over-aggressiveness" on the part of the police officers involved in this case, such evidence could seriously be considered by the trier of fact in determining his guilt or innocence. He therefore has substantial need for *limited* access to records of the Internal Affairs Division and it was not unreasonable for the respondent court to conclude that there was no other available means to obtain this information. Since the self-professed purpose of the Internal Affairs Division is "to police the police", it is inconceivable to this court that if any "skeletons in the closet" lurk there, they should be permitted to so remain.

Notwithstanding our agreement with the respondent court that the unusual circumstances of this case justified discovery, we do not intend to endorse carte blanche access to police records, nor do we believe that the broad intrusion imposed by the subject order was warranted. The only material contained in the officers' files which would be relevant to the issues of this case are complaints of over-aggressiveness on the part of these officers which resulted in departmental findings adverse to them.

The lower court is therefore directed to modify the order of production so as to limit it to Internal Affairs Records of the Tucson Police Department concerning the fact, nature, and outcome of disciplinary actions with respect to the four officers, affording the Department the right to delete in some manner the identity of complainants or references to irrelevant matters. It would not be inappropriate for the court to then determine, in the presence of prosecution and defense counsel, whether there is anything in the record germane to the issue of "aggressiveness". If so, and only if it resulted in disciplinary proceedings, it should be made available to the defendant for appropriate use. We are of the opinion that this procedure protects the records from improper disclosure and at the same time protects a defendant against suppression of pertinent evidence.

HATHAWAY, C. J., and KRUCKER, J., concur.