574 P.2d 1325

**The STATE of Arizona, Appellee,**

v.

**Jesse LOYD, Appellant.**

**No. 2 CA–CR 1050.**

Court of Appeals of Arizona, Division 2.

Jan. 19, 1978.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Plotkin & Calvin by Dain K. Calvin, Phoenix, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant Jesse Loyd was charged with attempted escape from a prison camp, the Fort Grant Training Center, in violation of A.R.S. § 13–395. He was found guilty by a jury and sentenced to a consecutive prison term of not less than two years and not more than thirty months.

Around 8 p.m. on April 27, 1976, Officer Fair, on guard duty at Fort Grant, was stationed in an area where inmates were not allowed to go without risking being placed on escape status. A wall two and a half feet in height with a red line down the center marked the boundary of the restricted area. Fair heard the sound of running footsteps, then saw appellant and another inmate, Green, jump the wall. When both had moved beyond the wall, he ordered Green to freeze.

Appellant and Green were taken to the yard office, separated, and questioned by Graham, Captain of Security, after being given the *Miranda* warnings. Two other prison security men, Hundley and Herbert, were present while appellant was questioned. At his trial, Graham, Hundley and Herbert all testified that appellant admitted he was escaping. He stated that someone was waiting in a car to pick them up, and they planned to go to Texas or California to start a new life.

■ The first issue raised by appellant is whether the trial court abused its discretion in granting the state's motion to quash subpoenas duces tecum. The trial was set for November 17, 1976. About a week before trial, appellant was interviewed in the Safford County Jail by two Department of Public Safety officers. Appellant contacted his attorney who shortly thereafter learned that DPS was conducting an investigation of Fort Grant. On November 12, 1976, he caused subpoenas duces tecum to be issued to three DPS officers requesting their appearance at trial and the production of "Any and all books, papers, documents, or tangible things relating to the pending investigation of Fort Grant Minimum Security Prison and particularly relating to the pending investigation allegedly involving wrongdoing by Fort Grant Corrections Officers."

Appellee filed a motion to quash the subpoenas duces tecum on the ground that none of the materials contained therein was relevant to the trial. On November 16, 1976, a hearing was had on the motion to quash, and it was denied. The court, however, ordered Sergeant Hawley of DPS, supervisor of the investigation, to appear the next morning with the report so the court could review it.

On November 17, 1976, appellant made motions for a continuance, pursuant to Rule 8.5, and for production of the report, pursuant to Rule 15.1, Arizona Rules of Criminal Procedure, 17 A.R.S. The trial court recessed the proceedings, and with both attorneys present conducted an informal discussion of the DPS report. Four DPS officers, including two witnesses the state would call at trial, Hundley and Graham, were placed under oath and asked if any disciplinary proceedings had been initiated against them as a result of the investigation. All four responded in the negative. Sergeant Hawley then testified under oath that as supervisor of the investigation, he had reviewed the report and there was nothing to indicate that any disciplinary proceedings had been initiated against anyone in connection with the report.

He testified that he sent two officers to the jail to interview appellant after receiving an anonymous telephone call that appellant knew where the bodies of two individuals from Fort Grant were buried, but the information obtained from appellant was of such little use that the officers did not even make a record of this interview. Nor was appellant's name mentioned in any other part of the DPS report.

Appellant's attorney then avowed to the court that appellant was present during an incident involving Graham and an inmate named Kennedy when Graham allegedly took aggressive action toward Kennedy or his property. Both attorneys were permitted to read about the Kennedy incident in

the report. Appellant's attorney was not, however, allowed to read any other part of the report. The trial court then granted the state's motion to quash.

Rule 15.1(e) provides in part:

"Upon motion of the defendant showing that he has substantial need in the preparation of his case for additional material or information not otherwise covered by Rule 15.1, and that he is unable without undue hardship to obtain the substantial equivalent by other means, the court *in its discretion* may order any person to make it available to him." (Emphasis added)

A ruling by a trial court under Rule 15.1(e) will not be modified in the absence of a clear abuse of discretion. *State v. Birdsall,* 116 Ariz. 196, 568 P.2d 1094 (App.1977); *State v. Piper,* 113 Ariz. 390, 555 P.2d 636 (1976); *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974).

In *State ex rel. DeConcini v. Superior Court, In And For Pima County,* 20 Ariz. App. 33, 509 P.2d 1070 (1973), where a criminal defendant charged with obstructing justice sought for possible impeachment purposes *all* internal affairs records of the Tucson Police Department concerning four police officers who were to be witnesses for the prosecution, we stated:

"Exercise of judicial discretion, however, is circumscribed by the reasonableness of the request since mere 'fishing expeditions' are not to be countenanced. [Citation omitted] There are many matters contained in the files of these officers which have absolutely no bearing on the issues in this case." 20 Ariz.App. at 35, 509 P.2d at 1072.

We find that no abuse of discretion has been shown here. Appellant contends he was interviewed in connection with the DPS investigation as a potential witness against Fort Grant corrections officers, and he needed access to the report to develop information showing bias, hostility, or motive on the part of the officers who were scheduled to testify for the state. Appellant's request in the subpoenas duces tecum for all information relevant to the DPS report was overbroad and unreasonable.

In DeConcini, supra, rather than endorse carte blanche access to the police records, we directed the trial court to modify its order of production:

". . . so as to limit it to Internal Affairs Records of the Tucson Police Department concerning the fact, nature, and outcome of disciplinary actions with respect to the four officers, affording the Department the right to delete in some manner the identify of complainants or references to irrelevant matters. It would not be inappropriate for the court to then determine, in the presence of prosecution and defense counsel, whether there is anything in the record germane to the issue of 'aggressiveness.' If so, and only if it resulted in disciplinary proceedings, it should be made available to the defendant for appropriate use." 20 Ariz.App. at 37, 509 P.2d at 1074.

The only material in the DPS report which would be relevant to the issues in appellant's trial would be complaints against the officers which resulted in disciplinary proceedings against them. Since the court had Hawley, the supervisor of the investigation, under oath and learned that no disciplinary proceedings had been initiated against anyone, it follows that appellant was not entitled to access to the report for the purpose of impeaching the state's witnesses. By this procedure, the "in camera" requirement of *DeConcini* was satisfied. It was unnecessary for the trial judge to read the entire report himself to determine that no disciplinary proceedings had been brought against the state's witnesses.

Evidence of past incidents with Graham, appellant argues, would be relevant not only to Graham's credibility but to his fear of Graham and thus the voluntariness of his confession. First, it must be noted that at trial appellant took the stand in his own defense and denied making any confession of escape to Graham. Second, both attorneys were permitted to read the portions of the report relevant to the Kennedy incident. Apparently Kennedy denied being abused by Graham and the allegations were unfounded.

The second issue raised on appeal is whether the trial court abused its discretion in denying appellant's motion for continuance. Appellant wanted time to interview the officers and review the report so he could develop information to use in impeaching the state's witnesses.

A motion for continuance is not granted as a matter of right. The matter is solely within the sound discretion of the trial judge whose decision will not be disturbed unless there is a clear abuse of discretion and unless denial of the motion is shown to be prejudicial to the defendant. *State v. Ohta,* 114 Ariz. 489, 562 P.2d 369 (1977); *State v. Jackson,* 112 Ariz. 149, 539 P.2d 906 (1975). In Arizona, it is not an abuse of discretion to deny a continuance where the testimony sought is to be used for impeachment purposes. *State v. Jackson, supra; State v. Cotton,* 103 Ariz. 408, 443 P.2d 404 (1968). Appellant has failed to show he was prejudiced by the refusal to grant a continuance.

The third issue is whether the trial court abused its discretion in refusing to give appellant's requested instruction:

"Exclusive of the fact that there may be evidence of a confession, if the Jury finds that the crime has not been consumated, [sic] then they are to find the Defendant not guilty."

Appellant cites no authority to support this instruction. The instruction confuses the respective roles of the judge and the jury. The judge makes preliminary rulings on the admissibility of the evidence, and the jury determines what weight it will give to the evidence.

The general rule is that before a confession or incriminating statement is admissible there must be submitted other evidence outside the confession or statement tending to prove corpus delicti. *State v. Pineda,* 110 Ariz. 342, 343, 519 P.2d 41, 42 (1974). If such preliminary proof has been submitted the confession or statement may then be used to assist in proving the corpus delicti beyond reasonable doubt. If the state fails to make this showing, the trial court should grant a motion for a directed verdict of acquittal. *State v. Hernandez,* 83 Ariz. 279, 320 P.2d 467 (1958). Appellant made such a motion after the state rested and it was denied. The confession was thus admissible and properly before the jury.

The final issue is whether it was fundamental error for the court to instruct the jury as follows:

"If a witness has been convicted of a felony, that conviction does not necessarily mean that you cannot believe his testimony. A witness' conviction of a felony is one of the circumstances you should consider in determining whether to believe that witness."

The record does not reveal any objection by appellant to this instruction. Absent fundamental error, an objection not made to the trial court cannot be argued on appeal for the first time. *State v. Rodriquez,* 113 Ariz. 409, 413, 555 P.2d 655, 659 (1976). We find no fundamental error in the instruction as it complies with R.A.J.I. Stand. 5A. The use of this instruction was indicated by the evidence. Appellant testified in his own behalf and the fact that he had been convicted of two prior felonies was brought out on direct and cross examination. A witness' credibility may be impeached by a prior felony conviction. *State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973). The credibility of the testimony of an ex-convict is a question for the jury. *State v. Hull,* 60 Ariz. 124, 132 P.2d 436 (1942).

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.