662 P.2d 1007

**STATE of Arizona, Appellee,**

v.

**Jess James GILLIES, Appellant.**

**No. 5424.**

Supreme Court of Arizona,
En Banc.

March 1, 1983.

Rehearing Denied April 19, 1983.

502

504

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.

Jess James Gillies in pro per.

HAYS, Justice.

In the early morning of January 29, 1981, Suzanne Rossetti was reported missing by her parents when she failed to pick them up to drive them to the airport. Her body was discovered several days later buried under a pile of rocks on Fish Creek Hill in the Superstition Mountains. The medical examiner determined that the cause of her death was exsanguination, aspiration of blood and extensive head injuries.

Appellant Jess Gillies was arrested on February 3, 1981, tried and convicted by a jury of kidnapping, sexual assault, aggravated robbery, computer fraud in the first degree, and first degree murder. He was sentenced to 21 years each for the kidnapping and sexual assault, to 15 years each for the aggravated robbery and the computer fraud, all sentences to run consecutively, and to death for the first degree murder conviction. We have jurisdiction of the appeal from the convictions and sentences pursuant to A.R.S. § 13–4031, § 13–4035 and Ariz. Const. art. 6 § 5(3).

Confessions by the appellant to various friends led to his arrest and constituted the majority of evidence against him. Gillies lived and worked at Weldon's Riding Stables in Phoenix at the time of the crime. On January 28, 1981, Gillies and Mike Logan[1] were in the U-Totem at 52nd Street and Van Buren when Suzanne Rossetti drove up to make a purchase. Upon returning to her car, she discovered she had locked herself out and solicited the aid of the two young men. In gratitude for their help in unlocking her car, Rossetti bought the men a six-pack of beer and offered them a ride back to the riding stable. En route, one of the men grabbed Rossetti and, after stopping the car, pulled her to the ground where they both raped her. Gillies and Logan drove their victim to Papago Park and then to her apartment, apparently raping her at both locations. The men rifled her purse and scavenged her apartment for valuables. (When arrested, Gillies was found in possession of several belongings of Rossetti, including her credit cards.) Rossetti was finally transported to the Superstitions where she was pushed from a cliff, tumbling 40 feet down the rocky hillside. Gillies and Logan pursued their victim down the hill and found her still alive. Rossetti begged for mercy, told the men she was going to die anyway and to let her die in peace. According to Gillies, Logan responded: "That's right, bitch, you are." According to Logan, Gillies began calling the victim a whore and a bitch. The victim was then bashed on the head with rocks until she lost consciousness. Gillies and Logan covered her with rocks (a detective testified that two men were needed to remove one of the rocks from her body) and drove back to Phoenix in her car. According to the medical examiner, Suzanne Rossetti died in approximately ten to fifteen minutes, presumably after she was buried.

Hair and blood were found near the victim's grave. Damage caused by small animals had been sustained by the body. The right cheek of the victim had been crushed and the eye was missing from the right socket. The medical examiner described various lacerations, abrasions, avulsions, and fractures to the skull and body of the victim. The victim tested positive for seminal fluid.

Between January 28 and February 3, Gillies and Logan accessed the Valley National Bank 24-hour automated teller twenty-eight times using Rossetti's card. Because only $250 can be withdrawn in a given 24-hour period, 13 of the attempts to obtain cash were unsuccessful.

## I. CORPUS DELICTI

At the close of the state's case, the appellant made a motion for directed verdict of acquittal on the ground that the state failed to present sufficient evidence to establish the corpus delicti of sexual assault. Appellant submits that his incriminating statements alone are insufficient to sustain his conviction.

The state responds that appellant has waived this claim because he did not object before the incriminating statements were admitted into evidence. The failure of the defendant to object to the introduction of his statements when they are offered does not waive his right to question their admissibility for the purpose of proving corpus delicti. A defendant might not object at the time the statements are of-

---

1. Michael Logan was tried separately and sentenced to life imprisonment without possibility of parole for 25 years. Pursuant to a plea agreement, Logan showed the investigators where the body was buried and received this reduced sentence.

fered on the theory the state will prove corpus delicti before resting its case. *State v. Hernandez*, 83 Ariz. 279, 283, 320 P.2d 467, 469 (1958). Appellant has sufficiently preserved this issue for appeal.

An accused may not be convicted on his own uncorroborated confessions. Before such confessions are admissible as evidence of a crime, the state must establish the corpus delicti by proving that a certain result has been produced and that someone is criminally responsible for that result. Only a reasonable inference of the corpus delicti need exist before a confession may be considered. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982). If the state fails to make this showing, the trial court should grant a motion for directed verdict of acquittal. *State v. Lloyd*, 118 Ariz. 106, 574 P.2d 1325 (App.1978).

The victim was found not wearing underpants and a pair of panties was discovered in the parking lot of the Phoenix Zoo where she was allegedly raped. Her girlfriend testified that the victim normally wore underpants. The victim's shoe was pushed inside the leg of her pantyhose in a manner suggestive of violence. The medical examiner discovered seminal fluid in the victim's vagina; foreign pubic hairs were found in her pubic area. We consider this to be sufficient evidence to create a reasonable inference that someone had perpetrated sexual assault upon the victim. The trial court did not err in denying appellant's motion for directed verdict of acquittal.

## II. SUFFICIENT EVIDENCE OF COMPUTER FRAUD

Appellant also submits that insufficient evidence was presented to sustain his conviction for computer fraud in the first degree pursuant to A.R.S. § 13–2316(A).[2] The court denied appellant's motion for directed verdict of acquittal on this count.

**2.** Arizona Revised Statutes § 13–2316(A) provides:

"A person commits computer fraud in the first degree by accessing, altering, damaging or destroying without authorization any computer, computer system, computer network, or any

17 A.R.S. Rules of Criminal Procedure, rule 20(a), provides for a judgment of acquittal prior to verdict only when there is "no substantial evidence to warrant a conviction." In reviewing a denial of a defendant's motion for directed verdict, the appellate court must view the facts most strongly in favor of upholding the jury's verdict. *State v. Printz*, 125 Ariz. 300, 609 P.2d 570 (1980).

The record indicates that substantial evidence was presented to support the conviction of computer fraud in the first degree. Bank records document that the victim's Valley National Bank card was used to access that bank's automated teller machine system twenty-eight times and obtain funds therefrom between January 28 and February 3. Testimony by the department manager of Valley National Bank's automated teller machines clearly classifies those machines as computer systems. Photographs were taken of videotapes produced by the bank's teller system. These photographs, admitted into evidence, reveal Jess Gillies and Mike Logan using the teller. It is also clear from the evidence that the appellant intended and did in fact control money from the victim's account by falsely representing himself as Suzanne Rossetti. The trial court did not err in denying the motion for directed verdict.

## III. IMPEACHMENT WITH A PRIOR CONVICTION

Appellant submits that the trial court erred in determining that he could be impeached with his prior felony conviction. The trial court conducted a pretrial hearing and, pursuant to rule 609, 17A A.R.S. Rules of Evidence, held the prior conviction admissible should the appellant testify. This ruling, claims appellant, was improper and denied him the right to testify and due process of law.

part of such computer, system or network, with the intent to devise or execute any scheme or artifice to defraud or deceive, or control property or services by means of false or fraudulent pretenses, representations or promises."

■ Rule 609 admits evidence of a conviction of a felony for the purpose of attacking a witness' credibility if the court determines that the probative value of the evidence outweighs its prejudicial effect. In the absence of an abuse of discretion, we will not overturn a trial judge's decision admitting the prior conviction of a defendant for purposes of impeachment. *State v. McElyea,* 130 Ariz. 185, 635 P.2d 170 (1981).

■ Due to the absence of witnesses to the alleged crimes, the credibility of the appellant was of considerable importance. The trial judge found that the severity of the crimes was so great in comparison to the prior conviction of theft that the likelihood the jury would be unduly prejudiced was far outweighed by its probative value on the appellant's credibility. The burden under rule 609 was met; the conviction carried a sentence of imprisonment in excess of one year and (although the test is disjunctive and already satisfied) the prior crime involved appellant's dishonesty. The trial court's ruling was well-reasoned and correct.

## IV. RULE 17, ARIZONA RULES OF CRIMINAL PROCEDURE

Immediately preceding the trial, appellant was arraigned on his prior conviction of theft. Based on his admission of the prior, appellant was sentenced to the maximum terms on Counts I, II, III, and V of the indictment.

Rule 17.6, 17 A.R.S. Rules of Criminal Procedure, provides:

"Whenever a prior conviction is charged, an admission thereto by the defendant shall be accepted only under the procedures of this rule, unless admitted by the defendant while testifying on the stand."

■ The procedures delineated in rule 17 must be followed whenever an admission of a prior conviction is accepted. *State v. Canaday,* 119 Ariz. 335, 580 P.2d 1189 (1978). Rule 17 requires the trial court to advise a defendant of his rights, the consequences of pleading guilty and imposes a duty on the court to discover the voluntariness and intelligence of his plea before accepting appellant's admission.

■ Both parties acknowledge that the trial court did not comply with the requirements of rule 17 in accepting appellant's admission of the prior conviction, nor did appellant testify during trial. The remedy for this error is to remand for a resentencing hearing where the state must either prove the prior conviction or the mandates of rule 17.6 must be followed in accepting the admission. *Canaday, supra,* 119 Ariz. at 336, 580 P.2d at 1190. This case must therefore be remanded for resentencing of appellant on Count I, kidnapping; Count II, sexual assault; Count III, aggravated robbery; and Count V, computer fraud in the first degree.

## V. ARIZONA DEATH PENALTY STATUTE IS CONSTITUTIONAL

■ A. The appellant asserts that the death penalty statute constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and article II, section 15 of the Arizona Constitution. We have previously considered and rejected this contention. *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981).

■ B. Arizona Revised Statutes § 13–703(C) provides that the court shall disclose to the defendant or his counsel all material contained in the presentence report "except such material as the court determines is required to be withheld for the protection of human life." The statute then prescribes that any withheld information shall not be considered in determining the existence or nonexistence of aggravating or mitigating circumstances. The appellant submits that the statute violates the due process provisions of the fourteenth amendment to the United States Constitution and article II, section 4 of the Arizona Constitution because it precludes the court from considering mitigating circumstances which would dictate against imposing the death penalty. The appellant further argues that he cannot know if the court has withheld information because no rule pro-

vides for notice when material has been excised. This, he posits, renders the statute unconstitutional on its face and prohibits the imposition of the death penalty.

While challenges to our death penalty statute are to be anticipated, we find no merit in this novel argument. Appellant's basic premise that a defendant has no notice if material has been excised is incorrect. Rule 26.6(c), 17 A.R.S. Arizona Rules of Criminal Procedure, states: "When a portion of the presentence report is not disclosed, the court shall inform the parties and shall state on the record its reasons for making the excision." Arizona Revised Statutes § 13–703(C) imposes the additional requirement that material withheld from a presentence report for the protection of human life shall not be considered in imposing the death penalty. If material is withheld pursuant to § 13–703(C), the court must comply with rule 26.6(c) and also indicate that the excised material was not considered by the court in determining the sentence. *State v. Watson,* 114 Ariz. 1, 13, 559 P.2d 121, 133, *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1976).

In *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), we responded to the United States Supreme Court mandate in *Lockett*[3] and *Bell*[4] by requiring that a sentencing judge hear and consider evidence relevant to *any* mitigating circumstance when imposing the death penalty. Although the provision of A.R.S. § 13–703(C) (former A.R.S. § 13–454) precluding the judge from considering excised aggravating and mitigating evidence was in existence at that time, this court did not address that particular section in its opinion. In May of 1979, the Arizona Legislature codified the results reached in *Watson* giving us our present A.R.S. § 13–703. In all likelihood, had the legislature been aware of this apparent conflict between § 13–703(C) and *Watson* they would have ameliorated it.

However, since the record indicates that no information was withheld from the appellant's presentence report, he has no claim for relief. Indeed, it is difficult to imagine information which would at once mitigate the imposition of the death penalty and constitute a danger to human life.

■ C. Appellant next posits that the death penalty statute is unconstitutional because the statute does not guarantee the immunity of defendant's testimony at the sentencing hearing. Arizona Revised Statutes § 13–703(C) places the burden of establishing the existence of mitigating circumstances on the defendant, but does not provide immunity for his testimony. The appellant argues that he is put in an untenable position where he must decide whether to testify at the hearing concerning mitigating factors and risk having those statements used against him or remain silent and hope his conviction will be reversed. This, he asserts, violates due process.

Appellant also submits the failure to grant immunity violates his right against self-incrimination as guaranteed by the fifth amendment because any statement made at the sentencing hearing can be used against him if the judgment is later set aside. Appellant claims the provision denies him equal protection as guaranteed by the fourteenth amendment and article II, section 13 of the Arizona Constitution. He compares his situation to that of a person who enters a plea agreement and has a guarantee that his statements will not be used against him if the plea is later set aside. 17 A.R.S. Rules of Criminal Procedure, rule 17.4(f). Appellant submits this unequal treatment renders the statute unconstitutional.

Appellant's arguments are based on an incorrect premise. Rule 26.4, 17 A.R.S. Rules of Criminal Procedure, requires that a presentence report be made in all cases in which the court has discretion over the penalty to be imposed, and enumerates a few exceptions inapplicable to appellant. The

---

**3.** *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

**4.** *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978).

comment to this rule provides that the report shall be prepared "only after the determination of guilt, so as to avoid, insofar as possible, placing the defendant in a position where he is expected to disclose to the probation officer facts and versions of the offense that he is not disclosing at trial." Rule 26.6(d)(2), 17 A.R.S. Rules of Criminal Procedure, provides that in the event a new trial is ordered, "neither a pre-sentence report nor any statement made in connection with its preparation shall be admissible" at the trial.

It is clear that the purpose of these rules is to protect a criminal defendant from self-incrimination. In order to secure the immunity which appellant seeks for his statements, he must proceed in compliance with these rules. In this way, appellant need not risk having his statements used against him at a later trial. We hold that the statute does not violate appellant's right against self-incrimination nor the equal protection and due process clauses of the fourteenth amendment.

■ D. Appellant's next attack on A.R.S. § 13–703 is that, because it provides only one alternative to the death sentence, *i.e.,* life imprisonment without possibility of parole for 25 calendar years, the statute violates the due process guarantees of the fourteenth amendment. We find no merit to this argument. "Power resides with the legislature to define that conduct which will not be tolerated in an ordered society and to provide punishment for those who violate public policy." *State v. Bly,* 127 Ariz. 370, 371, 621 P.2d 279, 280 (1980). We will not disturb a legislative determination that life imprisonment or a death sentence is appropriate for a conviction of first degree murder. Arizona's death penalty statute is not unconstitutional. *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1 (1983).

■ E. Appellant's final reason for claiming the Arizona death penalty statute is unconstitutional is that the penalty of death may not be appropriate at the time of execution. He urges that unless a defendant is allowed to present new mitigating factors, such as his model behavior as a prisoner, up to and including the day of his execution, the death penalty is not proper. If there is validity to appellant's claim, the avenues for post-conviction relief, both state and federal, are not closed to him. 17 A.R.S. Rules of Criminal Procedure, rule 32; 28 U.S.C. §§ 2241–2254 (federal habeas corpus).

## VI. DENIAL OF A FAIR TRIAL

Appellant Jess Gillies has filed his own brief in which he raises several additional issues, claiming he was denied a fair trial. We have considered all of them and dispose of each accordingly.

■ Appellant submits that the trial court erred in overruling an objection to the presentation of cumulative evidence by the state. The decision of a trial court on the relevance and admissibility of evidence will not be overturned absent an abuse of discretion. *State v. Mincey,* 130 Ariz. 389, 636 P.2d 637, *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1981). We find no such abuse here.

■ The appellant argues it was improper for the trial court to overrule an objection to the prosecutor's question of the medical examiner regarding whether Suzanne Rossetti was the victim of a homicide or an accident. Testimony by an expert witness which embraces an ultimate issue to be decided by the trier of fact is not objectionable if otherwise admissible. 17A A.R.S. Rules of Evidence, rule 704. The manner of the victim's death was certainly at issue; the overwhelming evidence that the victim was murdered dispels any chance that the jury was unfairly prejudiced by the testimony in question. We find no error.

■ Appellant submits that the trial court erred in denying his motion for directed verdict of acquittal on the charge of first degree murder. The evidence of appellant's participation in the murder of Suzanne Rossetti was substantial (see discussion *infra* ). The motion was properly denied.

Appellant's next objection is that the trial court erred by failing to require the jury

to specify under what theory of first degree murder it found him guilty. The jury was instructed on both felony murder and premeditation but simply returned a guilty verdict for first degree murder.

First degree murder is only one crime regardless of whether it occurs as premeditated or felony murder and the defendant is not entitled to a verdict on the precise manner in which the act was committed. *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982). We have carefully considered this argument in connection with the imposition of the death penalty (*infra*) and find there was substantial evidence to support each of the means charged.

Appellant asserts that the prosecutor commented on appellant's failure to testify in his own behalf. During closing argument, the prosecutor said:

> "All other evidence points to the defendant. His cigarette on the rock on top of her body, as in the car, all the physical evidence that had been taken from the vehicle, all her property, he didn't try to explain that because he couldn't. All of that evidence shows that there were two men involved and the defendant was one of the two men."

Although no timely objection was made, we will examine this argument for fundamental error. Prosecutorial comment on a defendant's failure to testify is objectionable if such reference is calculated to direct the jury's attention to defendant's exercise of his fifth amendment privilege. *State v. Still,* 119 Ariz. 549, 582 P.2d 639 (1978). Statements which are a fair rebuttal to an area opened by the defense do not violate the fifth amendment. *State v. Martinez,* 130. Ariz. 80, 634 P.2d 7 (App.1981).

In closing, defense counsel argued that the state had accumulated and presented to the jury physical evidence which had no real connection to the defendant. It is in response to this that the prosecutor remarked that the defendant could not account for this evidence. The prosecutor's comments were fair rebuttal to the remarks of defense counsel and were not objectionable.

Gillies' jury was instructed on both premeditation and felony-murder in connection with the first degree murder charge. During deliberations, the jury sent a note to the trial judge asking if it was necessary to designate which type of first degree murder and what amount of time was necessary for reflection. The judge assembled both counsel in his chambers. The defense attorney waived the presence of his client and the judge discussed the jury's questions. Both counsel agreed to the judge's responses which were then sent back to the jury. Appellant now claims reversible error was committed because this discussion occurred without his presence.

In *State v. Mata,* 125 Ariz. 233, 241, 609 P.2d 48, 56, *cert. denied,* 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980), we said:

> "Where it may be said, beyond a reasonable doubt, that there was no prejudice to the defendant, a communication between judge and jury outside the presence of defendant and counsel is harmless error."

Appellant's counsel was present during the communication and the notes concerned matters of law. No prejudice could have possibly inured to appellant. We find no error.

Gillies also raises these following issues:

1. The evidence supported an instruction on intoxication and it was error not to so instruct.

2. The trial court erred in not giving an instruction on circumstantial evidence.

3. The trial court erred in admitting certain statements by Detective Hackworth.

4. The trial court erred in allowing Detective Hackworth to testify at trial.

Rule 21.3(c), Rules of Criminal Procedure, 17 A.R.S., mandates waiver of an assignment of error to the failure to give an instruction if the party does not object before the jury retires to consider its verdict. Appellant did not object to the failure to

instruct on intoxication nor does such failure to instruct constitute fundamental error. *State v. Dickey,* 125 Ariz. 163, 608 P.2d 302 (1980). Appellant has waived this first issue and may not now claim error.

■ The failure to give an instruction on circumstantial evidence if the prosecution must rely exclusively thereon for a conviction is not fundamental error. *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970). Furthermore, appellant's conviction did not rest solely on circumstantial evidence. We find no merit to this second argument.

■ Failure to object to evidence, testimony or arguments waives these matters on appeal absent a finding of fundamental error. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981). The last two issues were not objected to at trial and do not constitute fundamental error.

## VII. AGGRAVATING AND MITIGATING CIRCUMSTANCES

At the sentencing, the court found four aggravating circumstances, concluded that the mitigating circumstances were not sufficiently substantial to call for leniency and sentenced appellant to death. Pursuant to *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41, *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976), we must independently review the record to determine the absence or existence of both aggravating and mitigating circumstances and to determine, based on the record before us, whether the death penalty should be imposed.

The first aggravating circumstance found by the court was that appellant previously had been convicted of a felony involving the use or threat of violence on another person. A.R.S. § 13–703(F)(2). The state established this aggravating circumstance by bringing in a former victim of a theft committed by the appellant. The trial court permitted the victim to testify as to the particular factual circumstances of the theft, a class-six felony. The victim stated that appellant stole $23 and a radio from him, and that the appellant choked him with one hand around the neck and threat-

ened to kill him and his parents. Based on this evidence, the trial court found that the appellant's conviction of theft was an aggravating circumstance under § 13–703(F)(2) because the theft involved the use and threat of violence on another person. We hold that this is an incorrect application of A.R.S. § 13–703(F)(2).

■ In order to constitute an aggravating circumstance under A.R.S. § 13–703(F)(2), the prior conviction must be for a felony which by its statutory definition involves violence or the threat of violence on another person. For example, in *State v. Watson, supra,* 120 Ariz. at 448, 586 P.2d at 1260 (1978), appellant argued that there was no showing of force or fear in his prior robbery conviction and therefore it could not constitute an aggravating circumstance. The court found this argument specious. "Fear of force is an element of robbery and the conviction of robbery presumes that such fear was present."

■ This reading of the statute guarantees due process to a criminal defendant. Evidence of a prior conviction is reliable, the defendant having had his trial and exercised his full panoply of rights which accompany his conviction. However, to drag in a victim of appellant's prior crime to establish the necessary element of violence outside the presence of a jury, long after a crime has been committed, violates the basic tenets of due process.

The state has urged that *State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828 (1981), supports the trial court's finding of theft as an aggravating circumstance under § 13–703(F)(2). *Greenawalt* allows consideration of evidence of the circumstances surrounding defendant's prior criminal conduct for the purpose of determining the weight to be given a prior conviction. We cannot allow what is, in effect, a second trial on defendant's prior conviction to establish the existence of an A.R.S. § 13–703(F)(2) aggravating circumstance.

■ The next aggravating circumstance found by the trial court was that the offense was committed in expectation of the

receipt of something of pecuniary value. A.R.S. § 13–703(F)(5). The state argues in support that because the appellant's theft of the victim's purse, money and credit cards occurred within one general transaction, the totality of circumstances demonstrate an expectation of pecuniary gain.

In *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), we held that the application of this aggravating circumstance was not limited to the "hired gun" situation. However, we affirmed our prior holdings that the receipt of money must be established as a cause of the murder, not a result. We concluded in *Clark* that the circumstances surrounding the episode reflected that the expectation of financial gain was a cause of the murders. In *State v. Tison,* 129 Ariz. 526, 592, 633 P.2d 335, 351 (1981), appellant's statements appearing in a psychological evaluation offered in evidence at the mitigation hearing established that the whole purpose of the murders was to obtain an automobile.

Without some tangible evidence, or strong circumstantial inference, it is not for the sentencing court to conclude that because money and items were taken, the purpose of the murder was pecuniary gain. From an independent examination of the record, we do not find any evidence that the receipt of pecuniary gain was a cause of the murder. To the contrary, appellant's own confessions demonstrate that the purpose of the murder was to eliminate the victim as a witness to her own rape. Nor do we believe that the circumstances surrounding the episode reflect that the expectation of pecuniary gain was a cause of the murder.

The trial court additionally found that the defendant committed the offense while in the custody of the Department of Corrections. A.R.S. § 13–703(F)(7). We find that this aggravating circumstance did not exist.

On December 26, 1980, the appellant was granted work furlough status in connection with his prior theft conviction, permitting him to choose his place of residence and employment subject to approval by a supervising officer. Appellant moved to Weldon's Riding Stables where he both lived and worked at the time of the crime.

Arizona Revised Statutes § 31–234(C) states that a person in a work furlough program is in the "constructive custody" of the Department of Corrections. To fall within the terms of A.R.S. § 13–703(F)(7), defendant must have "committed the offense while in the custody of the department of corrections, a law enforcement agency or county or city jail." The legislative intent of this section is to protect the guards and other inmates at such institutions where a defendant is confined and to discourage violence by incarcerated persons. We hold that A.R.S. § 13–703(F)(7) does not apply to one who is on unsecured work furlough status.

The trial judge next found that the offense was committed in an especially heinous, cruel and depraved manner, stating:

"The evidence that I have had presented to me establishes clearly that this victim was bound and terrorized for approximately eight hours prior to her death. The evidence establishes that she was raped by you as well as your accomplice on at least two different occasions, once at Papago Park area and the second time back at her apartment. The evidence establishes that you and the co-defendant either threw or pushed the victim down a 40-foot embankment, causing serious injuries to her at that time. The evidence has established that when you went down to the victim, she was injured, she was bleeding, she begged for mercy. The evidence establishes clearly that you showed a gross indifference to her situation. The victim was struck several times in the head by a rock. While she was still alive, you and your accomplice buried her under a pile of rocks. It was only thereafter she died."

The court found it was committed in a cruel manner because it was apparent that the victim suffered terrible pain and mental anguish prior to her death. We must agree.

Cruelty involves the mental and physical distress suffered by a victim. *State v. Ceja,* 126 Ariz. 35, 612 P.2d 491 (1980). Where the evidence is inconclusive as to whether a victim was conscious during the infliction of violence to his person, the sentencing court cannot find that cruelty existed. *State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982). Evidence of the mental anguish of a victim, resulting from such factors as being held captive for an extended period, uncertain as to his ultimate fate, is also relevant to establish cruelty. *State v. Steelman,* 126 Ariz. 19, 612 P.2d 475 (1980).

Suzanne Rossetti was repeatedly raped, was transported from Phoenix to the Superstitions not knowing her fate, cast from a 40-foot cliff, then brutalized and beaten into unconsciousness prior to her death. The victim clearly suffered both physical pain and mental anguish. We find an abundance of evidence of cruelty and that the statutory aggravating circumstance of "especially cruel, heinous or depraved" is present. Because the finding of cruelty is so compelling, it is unnecessary to make specific findings of heinousness and depravity. *See State v. Gretzler, supra.*

As mitigating circumstances, the trial judge listed appellant's age (twenty years at the time of the offense); that a felony-murder instruction was given; and that the accomplice to the crime, Mike Logan, received life imprisonment.

While the age of the defendant might be a mitigating circumstance, it will not alone always require leniency. *State v. Valencia,* 132 Ariz. 248, 250, 645 P.2d 239, 241 (1982), (age 16 is sufficiently substantial to call for life imprisonment instead of death). Jess Gillies was twenty at the time of the crime. The trial judge found that the deliberation, duration of the crime and maturity of appellant nullified his age. We agree.

The giving of a felony-murder instruction is a mitigating circumstance only where there is some doubt as to defendant's specific intent to kill the victim. *State v.*

*Schad,* 129 Ariz. 557, 574, 633 P.2d 366, 383 (1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982). Arizona case law holds that the fact that a felony-murder instruction was given to the jury is not relevant "where the defendant intended to kill the victim or where the defendant knew with substantial certainty that his conduct would cause death." *State v. Zaragoza,* 135 Ariz. 63, 659 P.2d 22 (1983). In *Zaragoza,* the defendant, the sole perpetrator of the crime, hit the victim repeatedly on the head and left her bleeding in an alley. There was no question that Zaragoza killed the victim. The court concluded that it was reasonable to find that the defendant intended to kill the victim and held that the giving of the felony-murder instruction was therefore not a mitigating circumstance.

The facts of the case at bench merit further discussion of the felony-murder rule as a mitigating circumstance. Two men perpetrated crimes upon the victim, each has accused the other of being the murderer and there is some doubt as to who actually struck the fatal blow. Gillies' jury was instructed on both premeditation and felony-murder and returned a verdict of guilty of first degree murder. During deliberation, the jury sent a note to the judge asking if it was necessary to designate which type of first degree murder. The judge responded in the negative and told them to simply return one of the two forms of verdict (guilty or not guilty). Thus, while it is possible Gillies was found guilty of premeditated murder, it is also possible that the jury found him accountable for the murder only on a felony-murder theory.

The United States Supreme Court has very recently rejected the death penalty for accomplice liability in felony-murders. In *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the Court held that a statutory scheme which permits the imposition of the death penalty, absent a finding that a defendant either killed, attempted to kill or intended to kill the victim, is unconstitutional. Enmund's code-fendant robbed and fatally shot the victims at their farmhouse in central Florida; En-

mund drove the getaway car. Both men were found guilty of first degree murder and sentenced to death. Enmund was an aider and abetter only to the underlying felony, was not present at the scene of the crime and did not intend a killing or anticipate the use of lethal force. The record as construed by the Florida Supreme Court did not warrant a finding that Enmund had any intention of participating in or facilitating a murder. At ——, 102 S.Ct. at 3377, 73 L.Ed.2d at 1152. The court surveyed the felony-murder statutes nationally and concluded that society considers death a disproportionate penalty for those who fall within this category. "American criminal law has long considered a defendant's intention—and therefore his moral guilt—to be critical to 'the degree of [his] criminal culpability.'" At ——, 102 S.Ct. at 3378, 73 L.Ed.2d at 1153.

While the Arizona capital sentencing statute reduces the likelihood that the death penalty will be imposed on a vicarious felony-murderer, even when aggravating circumstances are present, by making a defendant's minimal participation in a homicide a mitigating circumstance,[5] *Enmund* appears to limit it further. We now consider the case in light of *Enmund.*

In *Hall v. Florida,* 420 So.2d 872 (1982), and *Ruffin v. Florida,* 420 So.2d 591 (1982), the Florida Supreme Court applied *Enmund* to facts very similar to the case at bar. Hall and Ruffin abducted their victim, a woman seven months pregnant, from a grocery store parking lot and drove her to a secluded wooded area where they sexually abused her. The victim was pistol-whipped on her head, neck and body, robbed of her purse and shot to death in the back of her head while lying face down on the ground. Both men challenged the imposition of the death penalty on the basis of *Enmund.* Ruffin argued that his uncontradicted statements proved he did not actively participate in the homicide (he claimed that Hall fired the fatal shot), and was at best a

passive participant. The Florida court rejected this argument and distinguished *Enmund* on the grounds that Enmund was not present at the scene of the homicide, aided and abetted only in the underlying felony, and did not intend or anticipate a killing:

"In contrast, Ruffin was present, he assisted co-defendant Hall in the killing of Karol Hurst, raped her along with his partner, knew that Hall was going to kill her and made no effort to interfere with the killing and then continued on the joint venture, utilizing Mrs. Hurst's vehicle to drive to the convenience store ...

"The evidence is abundantly clear and sufficient to demonstrate Ruffin's joint participation in the premeditated murder of Karol Hurst, and this is the distinction between this case and the Enmund's case and that case is therefore not applicable to this proceeding."

*Ruffin v. Florida, supra,* 420 So.2d at 594.

A similar argument was rejected in *Johnson v. Zant,* 249 Ga. 812, 295 S.E.2d 63, 67 (1982), wherein the court said: "[W]e do not read *Enmund* so narrowly as to exclude imposition of the death penalty for all but those who fatally wield the murder weapon."

The trial judge specifically considered Gillies' participation in the crime, pursuant to A.R.S. § 13–703(G)(3), and concluded that the defendant was actively engaged in the kidnapping, the rape and the robbery of the victim, and that he transported her to the place where she was killed. The judge found it was immaterial who actually struck the blow to the head of the victim and that the evidence sufficiently showed that Gillies participated in the murder, if it was only to provide the rock which his accomplice used to strike her skull, causing death. "Her death is the result that you wished to have occurred, that is manifestly clear by your statements and manner, actions at the time the lady was killed. I do not find that your participation was relatively minor."

---

5. A.R.S. § 13–703(G)(3) provides as a mitigating circumstance: "The defendant was legally accountable for the conduct of another under the provisions of § 13–303, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution."

515

While *Enmund* apparently changes the current test in Arizona for imposing the death penalty upon the felony-murderer, *i.e.,* the court must now find that the defendant either killed, attempted to kill or intended to kill the victim, we are satisfied that this requirement has been met. Gillies actively participated in the events leading to the death of Suzanne Rossetti, was present at all times during the murder, and did nothing to interfere. He handed his accomplice the rock which was used to strike her and he helped bury the unconscious victim with rocks. According to the medical examiner, the victim took ten to fifteen minutes to die by exsanguination, aspiration of blood and head injuries. If the evidence shows that the defendant took an active and deliberate part in the killing, the death penalty may be imposed even though the theory of felony-murder has been presented to the jury. *State v. Steelman, supra,* 126 Ariz. at 21, 612 P.2d at 477. We find there is sufficient evidence to show Gillies' participation in the murder was substantial and intentional.

This court has recognized as a mitigating circumstance the fact that an accomplice to the crime was sentenced to life imprisonment. *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981). Appellant's accomplice, Mike Logan, received life imprisonment in exchange for pleading guilty to the first degree murder charge and leading the investigators to the victim's body. Appellant was also approached concerning a similar plea bargain with the state but chose instead to exercise his right to a trial. Given these facts, we do not consider the accomplice's sentence to be a mitigating circumstance. Any resulting inequity between the two sentences is a consequence induced by our plea-bargaining system.

Defense counsel also argued that appellant's capacity was impaired due to alcohol or mental disorder. Voluntary intoxication is a mitigating circumstance if defendant's capacity to appreciate the wrongfulness of his conduct was significantly impaired, but not so impaired as to constitute a defense to prosecution. *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (1980). The only evidence that appellant had been drinking on the night of the crime was testimony by a clerk at the U-Totem that the victim bought the two men a six-pack of beer and that they had been drinking before Rossetti arrived. It was never argued at trial that appellant was intoxicated nor did appellant present any credible evidence of intoxication or mental disorder at the sentencing hearing. The appellant apparently controlled the victim for a period of eight hours. Absent evidence, we cannot find this mitigating circumstance existed.

"[T]he death penalty should be reserved for only the most aggravating of circumstances, that are so shocking or repugnant that the murder stands out above the norm of first degree murders, or the background of the defendant sets him apart from the normal murderer." *State v. Watson, supra,* 129 Ariz. at 63, 628 P.2d at 946. We find that this murder is one which does indeed shock the conscience. In our independent review of the evidence, we find the existence of one aggravating circumstance, that the offense was committed in an especially cruel, heinous or depraved manner, and find that there are no sufficiently substantial mitigating circumstances to call for leniency. The death penalty is appropriate in this case.

## VIII. PROPORTIONALITY REVIEW

It is also necessary to examine the eighth-amendment concept of proportionality as enunciated in recent cases to determine whether the death penalty imposed upon Jess Gillies is excessive or disproportionate to the penalty imposed in similar cases. *State v. Gretzler, supra.*

Courts have found it appropriate in several instances to sentence a defendant to life imprisonment rather than death where the defendant did not actually wield the murder weapon. In *State v. Encinas,* 132 Ariz. 493, 647 P.2d 624 (1982), the victim was beaten, robbed and held down on the road by the defendant and his accomplice while a third, Gerlaugh, drove over him with a car. The two accomplices then

stabbed the victim thirty to forty times in the head and chest. Although Encinas' participation in the crime was substantial, he received life imprisonment. As mitigation, the court found Encinas' age, 18, that his participation in the crime was less than his accomplices', no prior criminal record, and a showing of genuine remorse, coupled with favorable recommendations by probation officers.

In *State v. Mata, supra,* the two brothers, Alonzo and Luis, raped and beat the victim until she lost consciousness. They put her in a car and drove her to a riverside where Luis killed her by cutting her throat. While Luis received the death penalty, Alonzo received life imprisonment based on the mitigating facts that he was not the actual killer, his young age (an "inexperienced" eighteen-year-old), no prior criminal record and cooperation with the police.

In both *State v. Mata, supra,* and *State v. Encinas, supra,* the evidence was uncontroverted that the accomplices did not commit the actual killing and other circumstances mitigated the imposition of the death penalty. This is not so in the present case. Logan and Gillies perpetrated crimes upon the victim which resulted in her death. Each man has accused the other of being the actual killer. We do not consider it critical who actually struck the fatal blow for, at a minimum, appellant handed Logan the rock, knowing that Logan intended to use it to kill the victim. Appellant's confessed participation in the crime is an admission that he killed Suzanne Rossetti. *See State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981) (where the reviewing court found that even though Tison did not actually pull the triggers on the guns which inflicted the fatal wounds, he was present when the murders took place and his participation was substantial. At a minimum, Tison stood by, armed with a gun, while his companions murdered the victims).

We are not persuaded that Gillies was sentenced to death in an arbitrary fashion violative of the eighth and fourteenth amendments and do not find the sentence of death imposed here to be excessive or disproportionate to the penalty imposed in similar cases. *See State v. Bishop,* 118 Ariz. 263, 576 P.2d 122 (1978), *affirmed,* 127 Ariz. 531, 622 P.2d 478 (1980) (defendant beat victim with a claw hammer, dragged him to a mine shaft 15 feet deep into which the victim either fell or was thrown; defendant then threw rocks on top of victim); *State v. Mata, supra* (sexual assault and murder); *State v. Zaragoza, supra* (sexual assault and murder found heinous and depraved).

We have reviewed the record for fundamental error, A.R.S. § 13–4035, and having found none, we affirm appellant's convictions on all counts and his sentence of death.

We remand for resentencing on Count I, kidnapping; Count II, sexual assault; Count III, aggravated robbery; and Count V, computer fraud in the first degree.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.

## SUPPLEMENTAL OPINION

HAYS, Justice.

█ This matter is before us on a motion for rehearing. After re-examination of the evidence and the law, we have concluded that it would be more appropriate for us to remand the first degree murder count to the trial court judge for resentencing.

In our opinion we struck down three of the four aggravating circumstances found by the trial court. The trial court had indicated that there were mitigating circumstances but they were not sufficiently substantial to call for leniency. Law and policy would indicate that the trial judge should again make the determination required by A.R.S. § 13–703(E). *See also Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982).

We remand for resentencing. Motion for rehearing is denied.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.