688 P.2d 175

**STATE of Arizona, Appellee,**

v.

**Robert Lloyd EMERY, Appellant.**

No. 5001–2.

Supreme Court of Arizona,
In Banc.

May 1, 1984.

On Motion for Reconsideration
June 6, 1984.

**550**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Gregory L. Hegstrom, Kingman, for appellant.

GORDON, Vice Chief Justice.

On December 20, 1978, the Mohave County Grand Jury filed an indictment charging appellant, Robert Lloyd Emery, and Edward Wesley Gilliam with second degree burglary and first degree murder. Appellant was convicted of both offenses following a jury trial. This Court reversed both convictions and remanded the matter to the trial court for further proceedings. *State v. Emery*, 131 Ariz. 493, 642 P.2d 838 (1982). Following retrial, appellant was again convicted and adjudged guilty of both offenses. He was sentenced to ten years imprisonment for burglary in the second degree and to death for the first degree murder. This appeal is from the judg-

ments and sentences. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

The facts are fully set forth in *State v. Emery, supra,* and will not be repeated here. On appeal, appellant challenges the admissibility of various items of real evidence introduced at trial, the trial court's failure to provide separate forms of verdict for first degree premeditated and first degree felony murder, the propriety of the trial court's consideration of several aggravating and mitigating circumstances, the proportionality of the death sentence in this case, and the permissibility of the death sentence given *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Based on our conclusions that the trial court did not err in admitting the evidence in question and that the record could not support a finding, beyond a reasonable doubt, that the appellant had killed, attempted to kill, or intended to kill, we uphold the convictions for both second degree burglary and first degree murder, and reduce the sentence for first degree murder to life imprisonment.

## FOUNDATION FOR EXHIBITS 15 THROUGH 20

The state sought to introduce into evidence the top sheet, blanket, pillow, and pillowcase taken from the victim's bed, and two knives found on the floor of her bedroom (exhibits 15 through 20 respectively). Det. Melton of the Mohave County Sheriff's Office, identified exhibit 16, the first to be introduced, "[b]y the description of the item and the card inside the bag showing Det. Knudson's initials and his number, DR number, and the date." At voir dire for exhibit 16, defense counsel challenged the identification as follows:

"Q. Mr. Melton, did you specifically see Officer Knudson initial [exhibit 16], place his initials on that item?

"A. Sir, I don't recall that I saw him place his initials on this particular item. He was writing the card and I was bagging each individual piece of evidence.

We were shoulder to shoulder and no one else was in the residence."

Defense counsel objected to the admission of exhibit 16 on the ground that the state failed to establish a proper foundation, and repeated the objection for exhibits 15, and 17 through 20 as the same identification was made for each. The exhibits were admitted over these objections.

■ The trial court's ruling on admissibility of evidence will not be disturbed on appeal absent a clear abuse of discretion. *State v. Macumber,* 119 Ariz. 516, 582 P.2d 162, *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). We find no abuse of discretion here.

■ Foundation for evidence can be established by either chain of custody or identification testimony. *State v. Ashelman,* 137 Ariz. 460, 671 P.2d 901 (1983); *Macumber, supra.* Ariz.R.Evid. 901(a) provides that "[t]he requirement of * * * identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A party can satisfy this requirement in a variety of ways: a witness can testify that the item is what it is claimed to be, Ariz.R. Evid. 901(b)(1), or the evidence can be shown to have distinctive characteristics which, taken in conjunction with circumstances, support a finding that it is what its proponent claims, Ariz.R.Evid. 901(b)(4). Det. Melton stated that the items produced were the items he and Det. Knudson had confiscated at the scene of the crime. He recognized them by their form (i.e. bedsheet, pillowcase, etc.) and by Det. Knudson's identifying cards. Those cards had been placed on the items to ensure easy identification; they constitute distinctive characteristics and provide sufficient bases for identification of exhibits 15 through 20. The fact that Det. Melton did not watch Det. Knudson write his initials and other identifying information on the tags which

he took from Det. Knudson and then placed in the bags in which the exhibits were stored goes to the weight to be given to the exhibits and not to their admissibility. *State v. Carriger,* 123 Ariz. 335, 599 P.2d 788 (1979), *cert. denied,* 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980) (fact that no one could positively identify jewelry as part of the jewelry store's pre-robbery inventory goes to the weight given to the evidence, not its admissibility); *State v. Morgan,* 128 Ariz. 362, 625 P.2d 951 (App. 1981).

## FOUNDATION FOR EXHIBITS 30 AND 31

■ Exhibits 30 and 31 were a pair of white tennis shoes with green stripes, the soles of which matched imprints found outside the victim's home on the morning after her death. The state claimed they were the shoes removed from the appellant when he was arrested. Det. Melton identified them based on his memory of them and "by Knudson's card." Defense counsel objected to their admission on the grounds that the state had not shown that the shoes were those taken from the appellant because Det. Melton could not recall physically removing, or observing someone else remove, the shoes from the appellant and because, even if they were appellant's shoes, the state failed to establish a proper chain of custody. The shoes were admitted over these objections. We find no abuse of discretion.

■ Det. Melton testified that the shoes produced were the shoes taken from the appellant based on his recognition of them and on Det. Knudson's identifying card. Det. Melton's testimony provided sufficient identification to support the admission of exhibits 30 and 31.[1]

## TWO FORMS OF VERDICT

■ Appellant claims that the trial court erred in failing to give the jury separate

---

1. Underlying appellant's argument is an implication of tampering. It is not incumbent upon a proponent of physical evidence "to show that there is no possibility that the evidence was

tampered with." *State v. Macumber, supra,* 119 Ariz. at 521, 582 P.2d at 167; *State v. Washington,* 132 Ariz. 429, 646 P.2d 314 (App.1982).

forms of verdict for first degree murder based on premeditation and felony murder. That claim is without merit. First degree murder is one crime in Arizona regardless of whether it occurs · as premeditated or felony murder and a defendant charged with first degree murder is not entitled to separate forms of verdict on the various ways in which first degree murder can be committed. *State v. Berndt*, 138 Ariz. 41, 672 P.2d 1311 (1983); *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983); *State v. Encinas*, 132 Ariz. 493, 647 P.2d 624 (1982).

## PROPRIETY OF THE DEATH SENTENCE

Appellant challenges imposition of the death sentence on three grounds. He claims the trial court's consideration of aggravating and mitigating factors was inadequate, that the death penalty would be disproportionate in his case, and that death cannot be imposed in light of *Enmund, supra*. Because *Enmund* and its Arizona progeny require us to reduce the sentence to life, we need not conduct an independent review of aggravating and mitigating factors or a proportionality review.

In *Enmund*, the United States Supreme Court held that a sentencing scheme which permits the imposition of the death penalty absent a finding that a defendant killed, attempted to kill, or intended to kill the victim violated the eighth amendment of the United States Constitution. Because the record clearly indicates that such a finding was not and could not have been made, appellant's sentence must be reduced to life imprisonment.

We have previously considered the propriety of the death sentence in light of *Enmund, supra*, where there was no specific finding by the trial judge that the defendant killed, attempted to kill, or intended to kill the victim of a first degree murder. In *State v. Gillies, supra*, Gillies and a co-worker attacked a woman as she was driving them to their workplace after they helped her unlock her car. After raping her several times and stealing her credit cards, they threw her off a cliff in the Superstition Mountains east of Phoenix, beat her with rocks and finally buried her under rocks while she was unconscious. Gillies was convicted, inter alia, of first degree murder and sentenced to death. On appeal, we recognized that *Enmund* changed the test in Arizona for imposing the death penalty; to comply with *Enmund* the trial court must find that a defendant killed, attempted to kill, or intended to kill the victim of a first degree murder before it can impose a sentence of death. In *Gillies*, the record revealed sufficient evidence from which we were able to conclude that the new test had been met. Gillies had been present at all times during the murder and had done nothing to prevent it. He had handed his accomplice the rock used to strike the victim and had helped bury her under rocks. In addition, the trial court, in considering whether Gillies' participation in the crime was relatively minor and therefore a mitigating factor under A.R.S. § 13–703(G)(3), had stated that

" '[The victim's] death [was] the result that you [Gillies] wished to have occurred, that is manifestly clear by your statements and manner, actions at the time the lady was killed.' "

*Gillies, supra*, 135 Ariz. at 514, 662 P.2d at 1021. Based on our finding that the *Enmund* requirement had been met, we held that the death penalty could be imposed and remanded the case to the trial court for resentencing consistent with our review of aggravating and mitigating factors.

In *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983), the defendant was convicted of first degree murder and sentenced to death based on his participation in a group effort that resulted in the death of a man. He was convicted of first degree murder and sentenced to death. He challenged the sentence based on *Enmund*. We agreed that

"in first degree murder cases where the jury is instructed on felony murder as well as premeditated murder, a general verdict finding the defendant guilty of first degree murder does not establish

whether the defendant in fact killed, attempted to kill, or intended to kill," and held that

"[to ensure compliance with *Enmund*], in future cases where the jury might have found the defendant guilty of first degree murder based on a felony-murder theory, the trial judge must determine beyond a reasonable doubt prior to imposing a sentence of death that the defendant killed, attempted to kill or intended to kill."

*Id.* at 199, 665 P.2d at 81. Though we found that McDaniel had "in fact kill[ed]", we reduced his sentence to life pursuant to our aggravation/mitigation review.

■■■ The rule set forth in *McDaniel, supra,* requires that when a jury, having been instructed on felony murder, finds a defendant guilty of first degree murder, the trial court must find that the defendant killed, attempted to kill, or intended to kill before it can impose the death sentence. When the appellant in the instant case was sentenced, *McDaniel* had not been decided and we do not, therefore, fault the trial court for imposing death without having followed the rule set forth therein. We trust that trial courts have been making the requisite finding since *McDaniel* was decided. Though the determination required by *Enmund, supra,* ought to be made by the trial court as part of its duty to impose sentence, we will not remand a case for resentencing when the record compels an affirmative finding that the defendant killed, attempted to kill, or intended to kill as it did in *Gillies, supra,* and *McDaniel, supra,* or when the record makes clear that the trial court could not have made such a finding. To remand in such cases would be inefficient if not futile. Judicial economy requires that we intervene when the record is as clear as it was in *Gillies* and *McDaniel* and as clear as it is in the instant case. *See also State v. Jordan,* 137 Ariz. 504, 672 P.2d 169 (1983) (court's finding in prior appeal that petitioner killed and intended to kill satisfied *Enmund* requirements; no need to remand for resentencing).

■■ The record in the instant case makes clear that the trial court could not, within its discretion, find that the appellant killed, attempted to kill, or intended to kill. At the sentencing hearing, the judge stated:

"[I]t would appear from the evidence that perhaps Mr. Emery was actually the person who dealt the death blows to the victim * * * although the court cannot at this time state unequivocally that [it] was proven beyond a reasonable doubt that Mr. Emery did strike the death blows * * *."

The state's argument that the appellant was the person who had attacked and killed the victim was supported by substantial evidence as was appellant's defense that his accomplice, rather than he, had done so. The judge stated his belief that the appellant, his accomplice, or both had killed the victim but that the true culprit(s) would never be known. Were we to remand for resentencing, the trial judge would be hard pressed to find that the appellant had killed or attempted to kill given his earlier doubts.

With respect to whether the appellant intended to kill, our reading of the record reveals no evidence to support a finding that the person who did not inflict the fatal stab wounds intended that the other party do so. Were the trial court to make such a finding, this Court would be compelled to reverse as a matter of law.

Because the record does not support a finding that the appellant killed, attempted to kill, or intended to kill, we reduce appellant's sentence for first degree murder to life. The conviction and sentence for second degree burglary is affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

## ON MOTION FOR RECONSIDERATION

GORDON, Vice Chief Justice.

We granted the state's motion for reconsideration in order to clarify our understanding and application of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

■ As stated above, the United States Supreme Court, in *Enmund,* held that the eighth amendment prohibits imposition of the death penalty absent a showing that a defendant killed, attempted to kill, or intended to kill. We wish to make clear that "intended to kill" encompasses the situation where a defendant contemplated, anticipated, or intended that lethal force would or might be used or that life would or might be taken in accomplishing the underlying felony. *See Ross v. Hopper,* 716 F.2d 1528 (11th Cir.1983); *Ex parte Raines,* 429 So.2d 1111 (Ala.1982); *Smith v. State,* 424 So.2d 726 (Fla.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); *Ruffin v. State,* 420 So.2d 591 (Fla. 1982); *Johnson v. Zant,* 249 Ga. 812, 295 S.E.2d 63 (1982), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); *People v. Garcia,* 97 Ill.2d 58, 73 Ill.Dec. 414, 454 N.E.2d 274 (1983); *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983); *State v. Stokes,* 308 N.C. 634, 304 S.E.2d 184 (1983).

As this definition of "intended to kill" was employed in our analysis of the propriety of the death penalty in this case, our decision stands.

HOLOHAN, C.J., HAYS, CAMERON and FELDMAN, JJ., concur.