690 P.2d 747

STATE of Arizona, Appellee,

v.

Ricky Wayne TISON, Appellant.

No. 4612-2-PC.

Supreme Court of Arizona,
En Banc.

Oct. 18, 1984.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

HAYS, Justice.

Petitioner, Ricky Wayne Tison, was convicted of four counts of first degree murder, two counts of armed robbery, three counts of kidnapping, and one count of theft of a motor vehicle. Petitioner was sentenced to death for each first degree murder conviction. On direct appeal, this court affirmed all the judgments of conviction and sentences. *See State v. (Ricky) Tison,* 129 Ariz. 526, 633 P.2d 335 (1981). The superior court subsequently denied a petition for post-conviction relief and a motion for rehearing. *See* 17 A.R.S. Arizona Rules of Criminal Procedure, rule 32. Petitioner then petitioned this court for review of the superior court's decision. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and rule 32. Relief is denied.

The facts of this case are set forth in our decision on direct appeal, *see (Ricky) Tison,*

*supra,* and in the companion case, *State v. (Raymond) Tison,* 129 Ariz. 546, 633 P.2d 355 (1981). Briefly, the facts are as follows. On July 30, 1978, petitioner and his two brothers, Raymond and Donald Tison, assisted in the escape of their father, Gary Tison, and Randy Greenawalt from the Arizona State Prison in Florence. The weapons used in the escape, and during the subsequent twelve-day flight, were provided by the three brothers. The five men fled the prison in a green Ford. Later they transferred to a Lincoln Continental. At one point the Lincoln became disabled with a flat tire. When four people in a passing car stopped to render aid, the gang killed the four and took their car. The gang was apprehended on August 11, 1978, after running a police roadblock.

I. ENMUND ISSUE

Petitioner argues that imposition of the death penalty in this case is unconstitutional under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The United States Supreme Court, in *Enmund,* held that the eighth amendment prohibits imposition of the death penalty absent a showing that the defendant killed, attempted to kill, or intended to kill. Intend to kill includes the situation in which the defendant intended, contemplated, or anticipated that lethal force would or might be used or that life would or might be taken in accomplishing the underlying felony. *Enmund, supra; State v. Emery,* filed June 6, 1984.

In the present case the evidence does not show that petitioner killed or attempted to kill. The evidence does demonstrate beyond a reasonable doubt, however, that petitioner intended to kill. Petitioner played an active part in preparing the breakout, including obtaining a getaway car and various weapons, and sawing off shotguns for use in the escape. At the breakout scene itself, petitioner played a crucial role by, among other things, holding a gun on prison guards. Petitioner knew that Gary Tison's murder conviction arose out of the killing of a guard during an

earlier prison escape attempt. Thus, petitioner could anticipate the use of lethal force during this attempt to flee confinement.

Lethal force was indeed used when the gang abducted the people who stopped on the highway to render aid. Petitioner played an active part in the events that led to the murders. He assisted in the abduction by arming himself and hiding with Gary Tison, Donald Tison, and Greenawalt while Raymond Tison flagged down the victims as they drove by. Petitioner assisted in escorting the victims to the murder site. At the site, petitioner, Raymond Tison and Greenawalt placed the gang's possessions in the victims' Mazda and the victims' possessions in the gang's disabled Lincoln Continental. After Gary Tison rendered the Lincoln inoperable by firing into its engine compartment, petitioner assisted in escorting the victims to the Lincoln. Petitioner then watched Gary Tison and Greenawalt raise their weapons and fire in the direction of the Lincoln. Petitioner was close enough and had a good enough view to observe that Gary Tison was on the passenger side of the Lincoln and Greenawalt was on the driver side. Petitioner did nothing to interfere. After the killings, petitioner did nothing to disassociate himself from Gary Tison and Greenawalt, but instead used the victims' car to continue on the joint venture, a venture that lasted several more days.

█ From these facts we conclude that petitioner intended to kill. We agree with the trial court that by his own statements petitioner's participation up to the moment of the firing of the fatal shots was substantially the same as that of Gary Tison and Greenawalt. *See (Ricky) Tison, supra,* 129 Ariz. at 545, 633 P.2d at 354. Petitioner, actively participated in the events leading to death by, *inter alia,* providing the murder weapons and helping abduct the victims. Also, petitioner was present at the murder site, did nothing to interfere with the murders, and after the murders even continued on the joint venture.

The present fact situation is significantly different from that in *Enmund* and much more analogous to cases decided subsequently to *Enmund* in which the *Enmund* requirement was satisfied. In *Enmund,* unlike in the present case, the defendant did not actively participate in the events leading to death (by, for example, as in the present case, helping abduct the victims) and was not present at the murder site. In contrast, in *State v. Gillies,* 135 Ariz. 500, 662 P.2d 1007 (1983), in which the *Enmund* requirement was satisfied, the defendant, as in the instant case, 1) actively participated in the events leading to the death of the victim by assisting in her abduction, transporting her to the murder site, and providing the instrument used to kill the victim, 2) was present at all times during the murder, and 3) did nothing to interfere. Also, in *Ruffin v. State,* 420 So.2d 591 (Fla.1982), as in the instant case, the defendant assisted in the abduction, was present at the killing, made no effort to interfere, and continued on the joint venture, using the victim's automobile. *See also, e.g., Hall v. State,* 420 So.2d 872 (Fla.1982); *Johnson v. Zant,* 249 Ga. 812, 295 S.E.2d 63 (1982), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). The dictate of *Enmund* is satisfied.

## II. ISSUES RAISED ON DIRECT APPEAL

Petitioner incorporates by reference all of the issues he raised to this court on direct appeal. We considered these issues on direct appeal and will not consider them again. *See* 17 A.R.S. Rules of Crim.Pro., rule 32.2(a)(2).

## III. ASSISTANCE OF COUNSEL

Petitioner argues that his assistance of counsel at trial was ineffective because trial counsel did not request a hearing pursuant to *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), to question the reliability of identifications by a witness, Inez Stott, who testified she saw appellant in Yuma County (the county where the murders occurred).

Petitioner's claim does not warrant relief. The facts relevant to petitioner's claim are as follows. On August 9, 1978, while petitioner was still at large, investigators interviewed Inez Stott. She told the investigators that while working at a general store in Wenden (Yuma County) Arizona, two teenaged boys, and later an older man, entered the store and purchased some spray paint. The investigators showed her photographs of Greenawalt, Gary Tison, and the three Tison brothers. The police report states that "STOCK [sic] did not positively identify any of the individuals shown to her, and the most that STOCK [sic] could say was that the teenage boys appeared to be similar in appearance as photographs of RAYMOND CURTIS TISON and DONALD JOE TISON."

Stott was interviewed again on September 11, 1978. As during the first interview, she was shown photographs of Greenawalt, Gary Tison, and the three Tison brothers. The police report states that this time "she indicated that RICKY and RAYMOND TISON were the two boys who purchased the paint." The next day Stott was interviewed a third time. The police report states that she "was shown all the photos of the male suspects involved in this investigation. She was unable to identify any one other than RICKY and RAYMOND TISON." During the third interview, Stott agreed to be hypnotized and apparently was hypnotized later that day.

■ Petitioner demonstrates concern that trial counsel did not, in light of the hypnosis conducted on September 12, 1978, question Inez Stott's competency to identify petitioner at trial. Petitioner was tried in early 1979. It was not until 1980 that this court specifically addressed the admissibility of testimony by witnesses who have been hypnotized, *see State v. La Mountain*, 125 Ariz. 547, 611 P.2d 551 (1980), and it was not until 1982 that this issue was settled, *see State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982). Even in *State v. Superior Court*, three justices wrote separately from the court's opinion and the fifth justice concurred in one of the separate opinions. It is not ineffective for counsel to fail to foresee developments in the law concerning a controversial subject like the use of testimony from a witness who has been hypnotized. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1333–34 (9th Cir.1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

■ Petitioner contends that the hypnosis and the suggestiveness of the photo showups created a substantial question about the reliability of Inez Stott's in-court testimony, and that it was therefore ineffective assistance for counsel not to request a *Dessureault* hearing. Any error was simply not prejudicial to petitioner. Petitioner argues that Inez Stott's testimony was important to the state's case because she was the only live witness who could place petitioner in Yuma County near the time of the murders. Petitioner neglects, however, other evidence placing him at the murder scene. It is uncontroverted that petitioner was with the gang both before the murders (at the prison escape) and after (at the roadblock capture). Petitioner's fingerprints were found on the Lincoln Continental and in the victims' Mazda. Finally, petitioner's own statements place him at the murder scene, as a participant in the abduction of the murder victims. We conclude that these facts rendered nonprejudicial any ineffectiveness of counsel arising from the failure to request a *Dessureault* hearing with regard to witness Inez Stott.

## IV. DEATH PENALTY ISSUES

■ Petitioner argues that Arizona's death penalty statute is unconstitutional because it excludes jury involvement in the sentencing decision. We disagree. *See, e.g., State v. Smith*, 136 Ariz. 273, 277–78, 665 P.2d 995, 999–1000 (1983); *State v. Gretzler*, 135 Ariz. 42, 56, 659 P.2d 1, 15 (1983); *State v. Blazak*, 131 Ariz. 598, 602, 643 P.2d 694, 698 (1982). The United States Supreme Court also disagrees. *See* Spaziano v. Florida, 44 CCH S.Ct.Bull.P., B4403 (July 2, 1984).

Petitioner also argues that on direct appeal this court did not conduct a proportionality review and that therefore petitioner's right to meaningful appellate review was violated. We conduct proportionality reviews pursuant to our decision in *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). We decided *Richmond* almost five years before we considered petitioner's case on direct appeal. Although not explicitly stated in the opinion, on direct appeal we followed *Richmond.* This contention is meritless.

## V. MIRANDA WARNINGS

Petitioner argues that several statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We addressed this issue on direct appeal. *See (Ricky) Tison, supra,* 129 Ariz. at 535–36, 633 P.2d at 344–45. We found that the record showed that before the trial court petitioner challenged the admissibility of his statements only as to voluntariness and not as to *Miranda,* and therefore the *Miranda* issue had been waived on appeal.

 Petitioner now desires a hearing to show that at the suppression hearing the parties understood that the statements at issue were being challenged as to *Miranda* as well as voluntariness. It is well established that a party must state distinctly the grounds for a challenge to the admissibility of evidence, *e.g., State v. Thomas,* 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981); *State v. Baca,* 102 Ariz. 83, 87, 425 P.2d 108, 112 (1967), and that we therefore consider the objective record, not the subjective intentions of one or more of the parties. We held on direct appeal that the record shows that the statements were not challenged as to *Miranda.* The issue was waived.

Relief denied.

HOLOHAN, C.J., and CAMERON, J., concur.

FELDMAN, Justice, concurring in part, dissenting in part,

I concur in all portions of the opinion except that dealing with the *"Enmund* Issue" (at 447–448). I dissent from that portion of the opinion because the majority's holding is contrary to *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368 (1982), because it does not follow our own rules and authority and because it usurps the function of the trial court.

*Enmund* teaches that the death penalty may not be imposed on one who neither killed, attempted to kill nor intended a killing. *Id.* at 797, 102 S.Ct. at 3376–77. Three years ago this court held that the record in this case did not support the conclusions that are now necessary to comply with *Enmund.* In affirming the sentence, we stated:

That they [the Tison brothers] did not specifically intend that the [victims] die, that they did not plot in advance that these homicides would take place, or that they did not actually pull the triggers on the guns which inflicted the fatal wounds is of little significance.

*State v. Tison [Ricky],* 129 Ariz. 526, 545, 633 P.2d 335, 354 (1981).

Since that initial review no further evidence has been presented. Defendant commenced proceedings for post-conviction relief (Rule 32, Ariz.R.Crim.P., 17 A.R.S.), and the trial court summarily denied such relief. The case is now before us for review of that summary denial. Thus, the record before us today is the same that was before us in 1981 when we affirmed *State v. Tison [Ricky], supra,* and *State v. Tison [Raymond],* 129 Ariz. 546, 633 P.2d 355 (1981).

*Enmund* was decided three years after the imposition of sentence and nine months after our affirmance of both *Tison* cases. The only question before us today is whether the intervening decision in *Enmund* permits imposition of the death sentence in the absence of an evidentiary hearing and findings on the issues which *Enmund* raises. Does the record today support what it could not support in 1981—that defendants

either killed, attempted to kill or intended that the victims be killed? Ignoring its statements in 1981, the majority answers affirmatively, holding that the *Enmund* test was met. It acknowledges that "the evidence does not show that petitioner killed or attempted to kill," but holds that "[t]he evidence does demonstrate beyond a reasonable doubt, however, that petitioner intended to kill." (At 448.)

Even if we ignore the previous contrary conclusion, today's holding is remarkable because there is no direct evidence that either of the brothers intended to kill, actually participated in the killing or was aware that lethal force would be used against the kidnap victims. Further, the trial judge made no finding on any of the *Enmund* factors. How, then, can this court hold that the *Enmund* test is satisfied? That answer, too, is contained in the majority opinion: *"we* conclude," states the majority, "that [defendant] intended to kill." (At 449 emphasis supplied.) I had thought that such inferences were for the fact finder, not the appellate court, especially one which had previously noted its inability to make such an inference.

The trial judge not only failed to make the necessary findings but, more importantly, conducted no inquiry on the subject. Because the sentencing hearing was held before *Enmund* was decided, the issue of defendant's individual *mens rea* with respect to the killing was not addressed; instead, the trial judge confined himself to making the findings required under the law as it then existed. The defendants had been convicted on a general verdict of guilt following instructions which included both premeditated murder and felony murder. The general verdict, of course, did not indicate which theory the jury adopted. It is clear, however, that the trial judge was aware that the record supported only a conviction under the felony murder rule, for he found as a mitigating circumstance that Ricky had been "convicted of four murders under the felony murder instructions." (R.T. 64(a), 3/29/79.) Under the law as it then existed, the judge was concerned (as was the trial judge in *Enmund*,

458 U.S. at 805–06, 102 S.Ct. at 3381, O'Connor, J., dissenting) with the question of defendant's participation in the underlying felony. The defendant's legal accountability for the conduct of another was a mitigating factor to be considered by the judge before imposition of the death penalty if the defendant's "participation was relatively minor." A.R.S. 13–703(G)(3). Thus, instead of the findings now required by *Enmund*, the trial judge found only the following:

> ... Even accepting as true [defendants'] statements of who actually fired the fatal shots, it cannot be said that their participation was relatively minor. By their own statements their participation up to the moment of the firing of the fatal shots was substantially the same as that of Randy Greenawalt and Gary Tison. At the moment of the firing their participation may not have equalled that of Randy Greenawalt and Gary Tison, but their standing and watching while armed themselves cannot be characterized as relatively minor participation.

(Special Verdict at 5.) This, of course, is the same finding made by the trial judge in *Enmund*, who "concluded" that the defendant "was an accomplice to the capital felony and that his participation had not been 'relatively minor,' but had been major ...." *Enmund*, 458 U.S. at 806, 102 S.Ct. at 3381 (O'Connor, J., dissenting). Such a finding is not sufficient to meet the *Enmund* test; Justice O'Connor has instructed with respect to the minimum *Enmund* requires:

> Thus, in deciding whether or not to impose capital punishment on a felony murderer, a sentencer must consider any relevant evidence or arguments that the death penalty is inappropriate for a particular defendant because of his relative lack of mens rea and his peripheral participation *in the murder.*

*Id.* at 828, 102 S.Ct. at 3393 (emphasis supplied).

Under the plurality view expressed by Justice White, the requirement may be

more stringent. Whatever the exact standard may be, it has not been met in this case. In the absence of an evidentiary hearing on the *Enmund* issues, we have only the majority's ultimate inference of defendant's intent. What is worse, the majority has drawn this inference before defendant has been permitted to submit evidence on the issue. It is wrong for a reviewing court to draw such an inference; because it is only one of multiple competing inferences, it should be left to the finder of fact. The error is compounded when the reviewing court draws the inference before receiving all the evidence. Because the sentencing hearing was not directed to the issue of *mens rea* and participation *in the murder*, and because defendant's application for relief under Rule 32 was summarily dismissed without an evidentiary hearing, to this date defendant has not been given a specific opportunity to submit evidence on the narrow issue which, after *Enmund*, became determinative.

To further compound the error, in drawing its inference the majority deals only with peripheral conclusions and ignores crucial facts. It decides that defendant's "participation *up to* the moment of the firing of the fatal shots was substantially the same as that of Gary Tison and Greenawalt." (At 749, emphasis supplied.) It points out that defendant "actively participated in the events *leading to* death." (*Id.*, emphasis supplied.) This is correct; no doubt defendant intentionally engaged in a dangerous criminal enterprise involving the use of deadly weapons. But no matter how the facts here are marshaled, we are faced with the *Enmund* rule and the facts which generated it. Enmund planned the armed robbery, transported two persons to the site of the crime, sent them into the house to commit the robbery knowing that they were armed, waited for them and drove the get-away car. With knowledge that they had killed, Enmund helped them flee, dispose of the weapons and attempt to evade apprehension. The facts in the instant case establish no more participation in the murders than was proved in *Enmund*. Here, as in *Enmund*, the inquiry is not to be focused on defendant's participation in the underlying felony which led to conviction under the felony murder rule, but on defendant's intentional or knowing participation in the killing, a subject on which the trial judge made no finding, but only stated that defendant's participation in the killing "may not have equalled" that of the others.

The majority makes much of the fact that defendant was at the "site," watched the killings and did nothing to stop them (At 449). It neglects to mention that, as in *Enmund* (458 U.S. at 784, 102 S.Ct. at 3370), all of this took place from some distance. The only evidence on the issue indicates that before the killings both of the Tison brothers had been sent back to the victims' car by their father and were some distance away from the actual place at which the killings occurred. (Statements of Ricky Tison, 1/26/79 at 13 and 2/1/79 at 35; Statements of Raymond Tison, 1/26/79 at 18, and 2/1/79 at 42.) There is neither a finding from the trial court nor evidence to establish that defendant was in a position to prevent the killing, if he had wanted to. There is evidence that although defendant was "worried" about his father's intentions toward the kidnap victims, he did not know what was going to happen until, from the other car some distance away, he and his brother presumably heard the first shot, turned and saw the killings. (Statements of Ricky Tison, 1/26/79 at 9 and 13; Statement of Raymond Tison, 1/26/79 at 18.)

The proper course for us is no mystery; we have recognized the pertinent legal principles in the recent past. In *State v. Emery*, 141 Ariz. 549, 688 P.2d 175 (1984), we acknowledged that the "determination required by *Enmund* . . . ought to be made by the trial court as part of its duty to impose sentence . . . ." In *Emery* we reduced the sentence to life because the record made it clear that the trial court could not make such a finding even on remand. In *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983) we invoked *Enmund* to require specific findings whenev-

er a defendant may have been convicted of capital murder pursuant to a felony murder instruction. We instructed sentencing judges that *they* must find beyond a reasonable doubt that the defendant killed, attempted to kill or intended the death of the victim before a sentence of death could be imposed. *Id.* at 199, 665 P.2d at 81. We did not indicate that where the trial judge failed to do so, we could cure the defect by a de novo review of the record. In *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983), we affirmed a sentence imposed pre-*Enmund* but applied the *Enmund* criteria and correctly found that defendant's "participation in the murder was substantial and intentional." *Id.* at 515, 662 P.2d at 1022. However, we based the affirmance upon a finding *made by the trial judge* that the victim's death was " 'the result that [Gillies] wished to have occurred.' " *Id.* at 514, 662 P.2d at 1021. In *Gillies* we also discussed the Florida cases on which the majority relies today,[1] pointing out that, as with the Florida defendants, Gillies had participated with his co-defendant in both the underlying felony *and* the actual killing. In such cases, where the participation of each of the defendants is so similar that the only question concerns which defendant struck the final blow, the *Enmund* standard is satisfied. The weight of authority indicates, however, that where the defendant's participation is only in the underlying felony, and where he does not intend that the victim be killed and does not actually participate in the killing, the death penalty may not be imposed. *State v. Emery, supra; People v. Jones,* 94 Ill.2d 275, 68 Ill.Dec. 903, 447 N.E.2d 161 (1982); *People v. Tiller,* 94 Ill.2d 303, 68 Ill.Dec. 916, 447 N.E.2d 174 (1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1302 (1983). This, of

course, is the ultimate principle for which *Enmund* stands.

The state argues,[2] and the majority flirts with, the question of foreseeability. Undoubtedly Tison should have foreseen the possibility that there might be a killing in the course of the prison break or the flight which followed. Thus, the majority points out (at 449) that petitioner "could anticipate the use of lethal force during this attempt to flee confinement." If this is an attempt to apply the tort doctrine of foreseeability to capital punishment cases in order to satisfy the *Enmund* criteria, it must be doomed to failure. Of course, the foreseeable "possibility" that death may occur may grow to a point where, as Justice White indicates, death may be imposed because the defendant "contemplated that life would be taken." *Enmund,* 458 U.S. at 801, 102 S.Ct. at 3379. The United States Supreme Court has not yet had occasion to draw that line and explain the degree of "contemplation" required to impose death, nor have we attempted to do so. No line can be drawn in this case because there is neither evidence nor a finding upon which to base consideration of such an issue. The trial judge found only as follows:

4. Each defendant could have reasonably foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause or create a grave risk of causing death to another person.

That finding is undoubtedly correct and probably is intended to reflect the aggravating circumstance described in A.R.S. § 13–703(F)(3). It would undoubtedly have been correct if applied to Mr. Enmund, who sent two armed robbers into a house to commit a robbery and certainly could have

---

**1.** *Hall v. State,* 420 So.2d 872 (Fla.1982) and *Ruffin v. State,* 420 So.2d 591 (Fla.1982).

**2.** At oral argument, however, the state conceded that remand for a new sentencing hearing was the best course to follow. In answer to the court's question

Wouldn't the state be better off with specific findings one way or the other ...?

the state's attorney responded, with commendable candor:

I think so, and I think, I think it's better for all parties concerned that there be specific findings and in this particular situation I think the trial court ought to make those findings to give this court and perhaps other courts a record from which to operate.

foreseen that they might be interrupted during the course of the crime and might kill to save their own lives or to escape. But *Enmund* teaches us that tort foreseeability is not the test. The evidence in this case regarding the reason for the killing of the kidnap victims has not yet been presented, so we cannot tell whether a "bright line" can be drawn between tort foreseeability and "contemplation." All we know here is that the only direct evidence of what the brothers expected when they began the criminal enterprise is the following statement made by Raymond, before being sentenced:

> Well, I just think you should know when we first came into this we had an agreement with my dad that nobody would get hurt because we [the brothers] wanted no one hurt. And when this [killing of the kidnap victims] came about we were not expecting it. And it took us by surprise as much as it took the family [the victims] by surprise because we were not expecting this to happen. And I feel bad about it happening. I wish we could [have done] something to stop it, but by the time it happened it was too late to stop it. And it's just something we are going to live with the rest of our lives. It will always be there.

(Aggravation Hearing and Sentencing Transcript, 3/14/79, at 159.)

This, indeed, is meager evidentiary support for this court's finding that defendant intended to kill. The trial judge should impose sentence after an evidentiary hearing on the issue of *mens rea*. The procedure to handle cases such as this is set forth in Rule 32, Ariz.R.Crim.P., 17 A.R.S., which provides:

> 32.1 ... any person who has been ... sentenced ... may ... institute a proceeding to secure appropriate relief on the ground ... that:
>
> > g. There has been a significant change in the law applied in the process-which led to ... sentence,
>
> \* \* \* \* \* \*
>
> 32.6(c) The [trial] court shall review the [Rule 32] petition.... If ... it deter-

mines that no material issue of fact or law exists which would entitle petitioner to relief under this rule ..., it may order the petition dismissed .... Otherwise, the court shall direct that the proceeding continue and set a hearing....

*Enmund* has changed the law since sentencing in this case. *Enmund* creates an issue as to defendant's *mens rea* with respect to the murder, not just the underlying felony. There has been no hearing on that issue. There has been no trial court decision on that issue. We are a reviewing court, not a fact finder. Without a hearing and a finding by the trial court, there is nothing for us to review.

I would obey the dictate of *Enmund* and require an "individualized consideration" of *mens rea* or intent to kill as a constitutional requirement in imposing the death sentence. 458 U.S. at 798, 102 S.Ct. at 3377. I would follow the rules we have written and procedures we have recognized in other cases to resolve the factual issue before addressing the constitutional issue. Once there has been a hearing, the trial judge can make the findings required by *Enmund*. Then and only then can we *review* the record. We should remand for a new sentencing hearing.

GORDON, Vice Chief Justice,

I concur with Justice Feldman's dissent.