911 P.2d 527

STATE of Arizona, Plaintiff–Appellant,

v.

The Honorable N. Pike JOHNSON,
Defendant–Appellee,

Michael BUCCOLA, Real Party
in Interest–Appellee.

No. 1 CA–CV 93–0162.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 30, 1994.

Reconsideration Denied Aug. 2, 1995.

Review Denied Feb. 21, 1996.*

* Corcoran, J., of the Supreme Court, did not par- ticipate in the determination of this matter.

Roderick G. McDougall, City Atty. by Samuel K. Lesley, Asst. City Prosecutor, Phoenix, for plaintiff-appellant.

Basil G. Diamos, Phoenix, for real party in interest-appellee.

## OPINION

CONTRERAS, Judge.

The State appeals from the Maricopa County Superior Court's denial of special action relief sought from rulings in the Phoenix City Court. The issue presented in this appeal is whether Motor Vehicle Division ("MVD") records attested to only by a computer-generated facsimile signature but which have not been personally inspected by a custodian of records satisfy the requirements of *State v. Irving,* 165 Ariz. 219, 797 P.2d 1237 (App.1990), and Arizona Revised Statutes Annotated ("A.R.S.") section 28–110(F) and are therefore admissible. Alternatively, we consider whether those documents are admissible under Rule 901(b) of the Arizona Rules of Evidence. The trial court concluded that *Irving* requires "human involvement," and, that because no individual from MVD personally compared the printed records to the actual data in the computer system, the foundational requirements had not been established. The trial court also refused to admit the MVD records pursuant to Rule 901(b), ruling that to do so would negate the purpose of A.R.S. section 28–

110(F). The superior court accepted special action jurisdiction but denied relief. Although we conclude that the trial court correctly precluded the records on the basis that the requirements of A.R.S. section 28–110(F) were not met, we also conclude that it should have admitted the documents under Rule 901(b). We therefore reverse.

## FACTS AND PROCEDURAL HISTORY

On May 31, 1992, and June 27, 1992, the real party in interest-appellee, Michael Buccola ("Buccola"), was cited for various civil and criminal traffic violations, among them, two counts of driving on a suspended license. The case proceeded to trial on September 22, 1992, in Phoenix City Court before Judge N. Pike Johnson ("trial court").

At trial, the State offered Buccola's computer-generated MVD driver's license records into evidence to establish that Buccola's license was, in fact, suspended at the time of the alleged offenses. Buccola entered an objection, contending that the records were not properly certified. In support of his objection and as rebuttal to any presumption afforded by A.R.S. section 28–110(F), he offered the testimony of Marie Lenze, the purported signer of the documents, and the custodian of the records section of MVD. She testified that (1) the statutory authentication required by A.R.S. section 28–110(F) was computer-generated and that the accompanying "signature" was also computer-generated; (2) she had never seen Buccola's driver's license report before and had no independent recollection of it; (3) she never compared the document with the data that was contained in the MVD's computer system, and she had not entered the actual information into the computer; (4) the document did, however, appear to be in the form of other records that she had seen printed from MVD authorized computers; (5) she was able to attest to the authenticity of the records because she was responsible for the maintenance of the computer data system and the conditions under which the data was to be released; and (6) a non-MVD computer could not obtain or print the data in the form presented on the record.

The trial court considered *Irving* and then stated:

> This is not really a certification. It purports to be a certification, but it is not. I suspect that the real law is that there's a presumption that what this says is the case unless some evidence is produced to flatly contradict the presumption. There's no longer any presumption that Ms. Lenze, or for whatever reason, obviously, the impracticality of it has been pointed out by the State and is also obvious to the Court, but that doesn't mean that you can take what appears to be a certification and what purports to be a certification, prove that it is not and then state that it satisfies the statute. It obviously doesn't.

The trial court declined to admit the documents into evidence. The State then requested that the documents be admitted pursuant to Rule 901(b)(1), (4), or (7). The trial court refused to do this as well, concluding that A.R.S. section 28–110(F) did not permit it to consider admission of the documents under the Arizona Rules of Evidence.

At the State's request, the trial court then stayed the proceedings, and a special action followed. The Maricopa County Superior Court accepted special action jurisdiction but denied relief. This appeal followed.

## DISCUSSION

### A. Standard of Review

In an appeal from a special action brought in the superior court, this Court will conduct a bifurcated review. First, we determine whether the superior court accepted jurisdiction and addressed the merits of the claim, and, if so, we then review those merits. If we find that the superior court did not address the merits, the sole issue before us would be whether that court abused its discretion when it declined to accept jurisdiction. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979). An examination of the superior court's minute entry makes it clear that the court did address the merits of the State's special action by accepting jurisdiction and denying relief. Accordingly, we address the merits of the State's claims.

■ The trial court's ruling on the admissibility of evidence and its factual findings concerning the foundation thereof will not be disturbed on appeal absent a clear abuse of discretion. *State v. Emery*, 141 Ariz. 549, 551, 688 P.2d 175, 177 (1984); *State v. Macumber*, 119 Ariz. 516, 582 P.2d 162, *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). The appellate court, however, is not bound by the trial court's conclusions of law, and we review those conclusions *de novo*. *City of Scottsdale v. Thomas*, 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988). Accordingly, we review the trial court's conclusions regarding the foundation of the documents under A.R.S. section 28–110(F) for an abuse of discretion, and we review its conclusions regarding the interaction between Rule 901(b) and the statute *de novo*.

### B. Admissibility Under A.R.S. section 28–110(F)

■ A.R.S. section 28–110(F) provides for the self-authentication of certain Arizona Department of Transportation records.

> F. A reproduction of the information placed on computer storage devices shall be deemed to be an original of the record for all purposes and *shall be admissible in evidence without further foundation in all courts* or administrative agencies *when the following certification by a custodian of the record appears* on each page:
>
> The below named individual, being a duly designated custodian of the motor vehicle division's public records, *certifies this document as a true reproduction of the information contained in the computer storage devices* of the department of transportation, motor vehicle division, in accordance with Arizona Revised Statutes section 28–110, subsection F. By: /s/ *(Print full name).*

A.R.S. § 28–110(F) (emphasis supplied). The issue before the trial court was whether the certification, which is printed automatically on a MVD driver's license record but not personally verified, is a certification within the meaning of A.R.S. section 28–110(F).

After considering the evidence presented by Buccola, the trial court concluded that it is not. We agree.

At the outset, we reconcile what appears to be a conflict between the word "certification" as used in the first paragraph, and "certifies" as used in the sample certification clause. Although the statute provides that the computer-generated record shall be deemed to be an original of the computer-stored information, this presumption is present if and only if the language of the second paragraph occurs on each page of the MVD records. Because the presence of the certification paragraph is a condition precedent to admission without further foundation for the MVD records, it is this language, and the process it contemplates, we address to determine the procedures to be followed to properly admit the MVD records under the statute. It has been suggested by another panel of this court that the mere printing of the certification paragraph on the MVD records is not an actual certification. *Irving,* 165 Ariz. at 224, 797 P.2d at 1242. Although the primary issue before the *Irving* court was the constitutionality of A.R.S. section 28–110(F), the court suggested, but did not clearly hold, that the statute "does require human involvement." *Id.* We now decide the question left open in *Irving,* which is whether the certification of motor vehicle division records under A.R.S. section 28–110(F) may be effectuated by an unverified and totally automated certification. We hold that it may not.

We first turn to the meaning of "certifies." The process contemplated by this word is ascertainable by examining the common law requirements and how they were codified into the modern rules of evidence. Certify means "[t]o authenticate or vouch for a thing in writing ... to testify or vouch for in writing; to assure or make certain; to tell positively." *Brown v. United States Nat'l Bank of Omaha,* 220 Neb. 684, 371 N.W.2d 692, 701 (1985) (citing *Black's Law Dictionary* 207 (5th ed. 1979); *American Heritage Dictionary of the English Language* 220 (1981)). Thus, the statutory attestation, taken at face value, is written testimony by Ms. Lenze that the document was a true reproduction of the information contained in the computer storage devices of the MVD. It is

well settled that competent testimony requires personal knowledge. Rule 602, Ariz. R.Evid., provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

▮ One may testify in writing in the form of an affidavit, and the law concerning competency to testify to produce affidavits is instructive. Rule 56(e), Arizona Rules of Civil Procedure, requires that affidavits shall be made on personal knowledge and shall affirmatively set forth that the affiant is competent to testify to the matters stated. In the context of computer-generated reports and exhibits submitted in support of motions for summary judgment, competency to testify must be established by evidence of the offeror's familiarity with the preparer or the manner in which the documents were prepared. *Villas at Hidden Lakes Condominiums Assoc'n v. Geupel Construction Co., Inc.,* 174 Ariz. 72, 81–82, 847 P.2d 117, 126–27 (App.1992). In *Hidden Lakes,* the computer-generated exhibits were accompanied by an affidavit claiming the offeror had personal knowledge, but no foundation was laid because the affidavit never established that the offeror had ever reviewed the exhibits, was familiar with the preparor, or was familiar with the manner in which the documents were prepared. Without such personal knowledge, the court held that the documents lacked foundation. *Id.* at 82, 847 P.2d at 127. Pursuant to *Hidden Lakes,* competency to make a certification requires the person making the certification to (1) review the documents he or she has certified; (2) be familiar with the person who prepared the documents that have been certified; and (3) be familiar with the manner in which the documents were prepared. *Id.* *See Yung Jin Teung v. Dulles,* 229 F.2d 244 (2d Cir. 1956) (reports were not admissible as official records since they did not appear to relate to matters within the personal knowledge of the persons who made and certified them); *Ski-Land Woolen Mill v. Cole,* 292 A.2d 844, 846 (Me.1972) (a valid certificate must contain an assertion of its truth that is based on the

personal knowledge of the person who signed it).

In the absence of A.R.S. section 28–110(F), we would conclude that the MVD documents in issue lacked foundation because Ms. Lenze satisfied neither (1) nor (2) above. Clearly, based on her testimony, Ms. Lenze never reviewed the documents, yet her computer-generated facsimile "signature" appears on each page of the documents as having done so. Additionally, Ms. Lenze had no independent recollection of who prepared Buccola's records in this case. Ms. Lenze was not competent to make the certification which appears on the records. It follows, then, that the State failed to lay a sufficient foundation for admissibility under the rules of evidence in light of the rebuttal evidence presented by the defense.

■ We next determine whether the documents satisfied the terms of A.R.S. section 28–110(F). The primary reason A.R.S. section 28–110(F) was adopted was to do away with the necessity of having someone from the MVD appear in court to certify the records. *Irving,* 165 Ariz. at 223, 797 P.2d at 1241 (citing House Transportation Committee, minutes of meeting on H.B. 2453, February 19, 1985, 37th Leg., 1st Session (MVD comments in support of legislation)). *See also* Senate Committee on Transportation, minutes of meeting on H.B. 2453, March 28, 1985, 37th Leg., 1st Session. *See* Rule 902(2) (domestic public documents not under seal require signature of custodian, plus signature of officer under seal certifying the official capacity of the custodian and the authenticity of the signature). If section 28–110(F) is complied with in full, it entitles the offeror of the records to: (1) the presumption that the computer printouts are an original of the data stored on the computer devices at the MVD, thereby making them self-authenticating documents; and (2) a waiver of the *procedural* requirements set forth in Rule 902(2), Ariz.R.Evid., for admission of self-authenticating documents. Beyond this, A.R.S. section 28–110(F) does not go. If it did, it would subsume the common law *intent* underlying a valid certification, and thus "tend to engulf" the court-made rules—a constitu-

tionally impermissible result. *Irving,* 165 Ariz. at 223, 797 P.2d at 1241.

The signature at the close of the subsection (F) language "certifies" the process by which the document is generated and indicates the record is indeed a public record generated on a specific date for a specific purpose; once the document generation process itself is certified, the document is a self-authenticating original. To further the intent of A.R.S. section 28–110(F), we must also imply the requisite personal knowledge of the document generation process from some indicia of "human involvement" in that process.

■ It is true that a computer-generated facsimile signature is presumed to be a valid certification absent contrary evidence. *Irving,* 165 Ariz. at 225, 797 P.2d at 1243. It is also true that some indicia of the requisite "human involvement" must be apparent from the face of the document or, for the foregoing reasons, the computer-generated facsimile signature, standing alone, will fail. We must therefore quantify the exact level of "human involvement" necessary to satisfy the terms of the statute and the intent of the laws of evidence, thus entitling the proponent to the statutory presumption. The case of *State v. Barckley,* 634 P.2d 1373 (Or.App.1981), is instructive to us in this endeavor. In *Barckley,* the motor vehicle department records were certified by a pre-printed certification clause. The records to be certified were first generated and printed. Next, the printed records were placed alongside a separate piece of paper containing a pre-printed certification and the date. When copied, both documents appeared together on a single sheet of paper. The *Barckley* court concluded that a "pen-and-ink" signature was not required because, by the very act of photocopying the two documents together as one, it could be inferred that "*someone* obtained a document of a kind that only the Division would have … [and] brought that document together with a second document stating that the first one is just what it appears to be." *Id.* at 1376 (emphasis in original). The court's concern in *Barckley* was not so much that the certification was pre-printed and then duplicated as it was that "the *process*

that certification contemplates has actually occurred." *Id.* (emphasis in original).

Accordingly, we too examine the *process* by which these records in this case were certified. The trial court concluded without objection that at some time in the past, someone had by programming instructed the computer to print the certification language on *all* further printed records that the computer generated. The intent behind the certification was neither contemporaneous with nor specific to the creation of Buccola's printed records. In essence, the certifying language is little different than the header paragraph appearing at the top of a printed page, which one may instruct a word processor to create once and use repeatedly and infinitely. The trial court concluded that by programming the computer to automatically print the section 110(F) language on each page of these records, "they programmed the computer to certify its own document." We agree with the trial court's analysis and conclusion as to what transpired with respect to "certification" of MVD documents.

Clearly, the rules of evidence, to which A.R.S. section 28–110(F) is but a mere supplement, do not contemplate a computer certifying its own documents. *See supra.* While *Barckley* does suggest that a "pen-and-ink" signature may be superfluous, it is only in circumstances where some human involvement in the certification process can be inferred from the face of the document. Where, as here, the record is barren of facts from which we may infer that the intent to certify is contemporaneous with and unique to the production of the specific record and is independent of computer control, additional foundation is required to establish the requisite "human involvement" which entitles the offeror to the statutory presumption. *See generally* 5 Wigmore, *Evidence* § 1635 (Chadbourn rev. 1975). For instance, if the certification form contained a date subsequent both to that of the document it authenticated and the defendant's traffic citation, it would lead us to the conclusion that, as a result of the citation, a search was made of the records for proof that the defendant's license was suspended and that the person making the certification could have had per-

sonal knowledge of this search. *Id.* at 1376. Additionally, the necessary human element would be established with some indicia on the face of the document, for instance as in *Barckley,* that the certification process was not totally computer-driven. We are fully aware of the awesome task of managing millions of records at the MVD, but we do not believe that it is unduly burdensome for the person who prints the records to then take the next necessary independent step and certify the creation of the documents in a manner consistent with *Barckley* or in a manner which satisfies the outlined requirements.

A.R.S. section 28–110(F), if complied with in full, relieves the proponent of compelling the attendance of a custodian from MVD at trial. It does not, however, relieve the MVD custodian whose name appears on the document from having personal knowledge of the document's creation or existence. Accordingly, the trial court correctly ruled that the requirements of the statute had not been met.

### C. Rule 901(b)

The State argues that the documents were admissible under Rule 901(b), Ariz.R.Evid. Specifically, the State contends that the documents satisfied either (b)(1) testimony of a witness with knowledge; (b)(4) distinctive characteristics; or (b)(7) public records or reports. The trial court declined to reach the merits of the State's Rule 901(b) argument, ruling that the application of A.R.S. section 28–110(F) prevented the records from being admitted under the rules of evidence. We disagree.

A close examination of *Irving* indicates that a statutorily prescribed method of authentication may not engulf court-made rules. *Irving,* 165 Ariz. at 223, 797 P.2d at 1241. Rather, if the statute is constitutional, it and the court-made rules must co-exist, with the statute providing a reasonable and workable alternative or supplement to the court made rules. By its ruling that the statute did not permit it to consider admission of the documents under the Arizona Rules of Evidence, the trial court erred because, as a supplement to the rules of evidence, the statute could not constitutionally

provide the sole means of admission of MVD documents. This was not the intent of the proponents of this statute, who clearly thought that the purpose of the statute was to put the MVD's records on computer and to provide for the admission of these records without requiring someone from the MVD to continually appear in court to certify them. *See* House Transportation Committee, minutes, *supra;* Senate Committee on Transportation, minutes, *supra.*

In any event, Rule 902(10) specifically allows for the operation of a statute such as A.R.S. section 28–110(F). Our finding that the foundation laid for these records does not satisfy the requirements of A.R.S. section 28–110(F) therefore does not preclude us from considering other avenues of admissibility under the rules of evidence. *See People v. Freeman,* 668 P.2d 1371, 1381 (Colo.1983) (statute providing specific method to self-authenticate motor vehicle records does not prevent records from being authenticated by any other method authorized by law).

Both parties have adequately briefed this issue on appeal, and the State has preserved its objection below. Accordingly, we may consider the merits of the Rule 901(b) issue. *Stewart v. Lee–Stewart, Inc.,* 5 Ariz.App. 216, 217, 425 P.2d 118, 119 (1967). Rule 901(a) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Rule 901 then sets forth several illustrations of sufficient authentication in various circumstances. *See* Rule 901(b). We may consider whether the proffered evidence meets one or more of the illustrations, and we may consider these illustrations cumulatively. *Cf. Emery,* 141 Ariz. at 551, 688 P.2d at 177. The authenticity of an exhibit may be established by a witness with knowledge who testifies that a matter is what it is claimed to be. Rule 901(b)(1); *Merrick v. United States Rubber Co.,* 7 Ariz.App. 433, 440 P.2d 314 (1968) (witness' testimony that he was an employee of plaintiff's office, was familiar with account and was generally familiar with plaintiff's electronic accounting records, laid sufficient foundation for introduction into evidence of reproduced records from that accounting equipment, notwithstanding fact that he had no personal knowledge of actual physical operation of plaintiff's electronic accounting equipment).

Authenticity may also be established by testimony regarding distinctive characteristics, including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Rule 901(b)(4); *State v. Romanosky,* 162 Ariz. 217, 224, 782 P.2d 693, 700 (1989) (witness' testimony that Florida souvenir T-shirts found in defendant's trailer on day after murder were similar to ones she had purchased on trip to Florida immediately prior to murder established sufficient foundation for admission of the T-shirts).

Lastly, public records or reports are presumed authentic when the proponent provides sufficient evidence that the public record or report was in fact filed in a public office as a public record or data compilation and that the public office originating the exhibit generally retained items of this nature. Rule 901(b)(7); *State v. Thompson,* 166 Ariz. 526, 803 P.2d 937 (App.1990) (Department of Corrections prison record containing fingerprints, physical description, and birth date of defendant as well as date of prior offense, provided sufficient evidence that exhibit was what State proposed it was—a valid prison record).

While Ms. Lenze by her testimony rebutted the statutory presumption of authenticity, at the same time, she provided sufficient testimony to allow admission of the documents under Rule 901(b). Ms. Lenze is undoubtedly a witness with knowledge, having been with the MVD for twenty-three years and being responsible for the maintenance of the filing system. Ms. Lenze testified that the document offered by the State appeared to share the distinctive characteristics of other records printed out by MVD-authorized computers, and that any other computers not authorized by the MVD would be unable to retrieve the data in the proper form. Lastly, Ms. Lenze testified that the offered documents were of the type authorized by law to be filed with the MVD and that the division

maintained over two million such records. Upon examining the totality of this testimony, sufficient foundation appears on the record before this Court for us to conclude that the offered MVD driver's license records should have been admitted pursuant to Rule 901(b). *See Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966) (appellate court may provide its own legal analysis of undisputed facts on the record).

## CONCLUSION

The trial court correctly refused to admit the MVD records pursuant to A.R.S. section 28-110(F) because it was effectively demonstrated by rebuttal testimony of the MVD custodian of records that a proper certification did not occur under A.R.S. section 28-110(F). Although there are methods available to effectuate a proper statutory certification of computer-generated documents, they were not utilized in the present case. *See Barckley.* The trial court erred, however, when it found that the statute precluded its consideration of the admissability of the MVD documents pursuant to Rule 901(b). Based upon our review of the record, we conclude that the MVD documents should have been admitted. Accordingly, we reverse the superior court and vacate the trial court's order precluding the admission of these records. This case is remanded for proceedings consistent with this opinion.

FIDEL, P.J., and TOCI, J., concur.