783 P.2d 1213

**In the Matter of the Appeal in PIMA COUNTY JUVENILE DELINQUENCY ACTION NO. 102091–01.**

No. 2 CA–JV 89–0034.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 30, 1989.

Susan A. Kettlewell, Pima County Public Defender by Regula Case, Tucson, for minor.

Stephen D. Neely, Pima County Atty. by Terry L. Chandler, Tucson, for State.

## OPINION

HATHAWAY, Judge.

This appeal is taken from the orders of the juvenile court adjudicating the minor delinquent on charges of possession of cocaine for sale (A.R.S. § 13–3408(A)(2)) and possession or use of cocaine within 300 feet of a school (A.R.S. § 13–3411(A)(2)) and placing him on probation. The issues raised on appeal pertain to the juvenile court's denial of the minor's motions to suppress.

On Monday, February 20, 1989, at approximately 3:30 p.m., Tucson Police Officer Stevenson was hailed by a passing motorist in the area of Drexel Road and Campbell Avenue in Tucson. The motorist told the officer that, as he was driving eastbound on Drexel over a wash that runs underneath Drexel, he observed a juvenile "pop up from the wash that runs there underneath the bridge, look toward his vehicle, popped back down in the wash, popped back up, looked at the vehicle again and go back down under the bridge at the wash." The officer drove to the bridge, parked his vehicle and walked down into the wash.

The wash is sufficiently wide at the point where it is crossed by Drexel that the bridge contains three large, rectangular tunnels approximately six feet tall. There are three schools on the block immediately south of Drexel. Sierra Middle School is located on the west side of the wash, Sunnyside Adaptive Education School is located on the east side of the wash, and Sunnyside High School is located to the south of both these schools. The schools are separated from the wash by chain link fences, and the officer testified that from his experience in working with school officers, the children were instructed not to enter the wash.

The officer spotted appellant sitting alone in the tunnel on the west side of the bridge. He was wearing a heavy jacket, despite the fact that it was "shirt sleeve" weather. The officer observed two other juveniles approaching the tunnel. He called to the three to come to him with their hands out of their pockets. All three complied, but appellant continued to place his hands in his jacket pockets despite the repeated request of the officer that he not do so. He also looked quickly over his shoulder several times. When appellant was approximately two feet from the officer, he once again reached into his pocket and quickly pulled his hand out. The officer grabbed his hand and told the minor to drop whatever was in it. The minor complied and revealed a brown vial with a spoon attached to it. The officer testified that based on his training and experience, he believed the vial to contain cocaine.

Appellant was placed under arrest and searched. The search revealed a small brown vial containing white powder, a large clear vial containing white powder with a silver spoon attached, a plastic bag containing white powder, two white envelopes, and $460 in $20 bills. He was then given his *Miranda* warnings and agreed to answer questions. He told the officer that the white substance was cocaine, that the money came from his allowance and from selling cocaine and that he took cocaine with him to Sunnyside High School every day and sold it to other students.

Appellant moved to suppress the physical evidence and his statements to the officer on the ground that the officer had no right to "search out and hail [the minor] from under the bridge" because the information provided by the motorist gave him no reason to suspect any criminal activity, citing *inter alia Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); and *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Appellant concedes that, if the officer was justified in calling the minor to him, the minor's behavior warranted the officer's subsequent actions.

The cited cases address the reasonableness under the fourth amendment of "seizures" by the police which are "less intrusive than a traditional arrest." *Brown v. Texas,* 443 U.S. at 50, 99 S.Ct. at 2640, 61 L.Ed.2d at 361. The analysis in each case begins with the determination whether the conduct in question constituted a "seizure" within the meaning of the fourth amendment. Not every contact between a police officer and a citizen, however, implicates the fourth amendment. *See Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Under *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968), a seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away...."

■ In the present case, we do not believe that the officer's conduct amounted to a seizure of appellant. The only testimony was that the officer stood at the entrance of the tunnel and "called the subject[s] to come toward me" with their hands out of their pockets. He did not at that point ask the minors their names, *Terry v. Ohio, supra,* nor did he ask them to explain what they were doing in the wash, *Brown v. Texas, supra.* To hold that this conduct constitutes a "seizure" within the meaning of the fourth amendment would mean that a policeman is essentially precluded from addressing any inquiry to a citizen unless he suspects criminal activity. Such a conclusion would severely restrict legitimate police activity such as, in this case, investigating the well-being of a child whose conduct has aroused the concern of a passer-by, and is not required by *Terry* or its progeny.

■ Even if the officer's actions were construed as a seizure of appellant, however, there was no fourth amendment violation. That amendment does not preclude seizures, but only requires that they be reasonable. *United States v. Brignoni-Ponce,* 422 U.S. at 878, 95 S.Ct. at 2578, 45 L.Ed.2d at 614. Whether a seizure is reasonable requires a balancing of the public and private interests involved. *Id.* at 878, 95 S.Ct. at 2579, 45 L.Ed.2d at 614-15.

Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

*Brown v. Texas,* 443 U.S. at 50-51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362 (citations omitted).

Applying those considerations to this case, it is apparent that the public has a strong and legitimate interest in the welfare of its children. Police officers are permitted, indeed, expected to respond to information which suggests that a child may be in peril and need assistance. The officer in this case acted not only on the information provided by the motorist but also on his own knowledge that the adjacent schools had prohibited their children from entering the wash. Further, because the wash was located next to an adaptive education center, the officer could not ignore the possibility that the child suffered from some form of disability. Moreover, the officer's conduct served to further the public interest by ascertaining the status of the child. Thus, we find that the state presented the specific, objective facts in support of the seizure required by *Brown v. Texas.*

In contrast, the resulting interference with appellant's individual liberty was minimal. Appellant was requested only to come to the officer and to keep his hands out of his pockets. As noted above, he was

not asked at this point either to identify himself or to explain what he was doing in the wash. Viewing the circumstances as a whole, we have no hesitation in holding that the seizure, if any, was reasonable.

Appellant also argues that the juvenile court erred in denying his motion, made with respect to the charge of possession of narcotics within 300 feet of a school, to suppress statements he made to the officer on the ground that apart from his statements the state had not proved the *corpus delicti.* "The general rule is that before a confession or incriminating statement is admissible there must be submitted other evidence outside the confession or statement tending to prove corpus delicti." *State v. Loyd,* 118 Ariz. 106, 110, 574 P.2d 1325, 1329 (App.1978). The state meets this burden by presenting independent evidence which "is sufficient, assuming it is true, to warrant a reasonable inference that the crime charged was actually committed by some person." *State v. Hernandez,* 83 Ariz. 279, 282, 320 P.2d 467, 469 (1958).

The statute under which appellant was charged makes it unlawful "[f]or a person to intentionally be present with one or more persons within three hundred feet of a school or its accompanying grounds to possess, use or sell a dangerous drug or a narcotic drug." A.R.S. § 13–3411(A)(2). Appellant argues that, without his statements, the only evidence was that he possessed drugs within 300 feet of a school while he was alone, and that the state therefore failed to prove the *corpus delicti.* We disagree. *Hernandez* does not require proof of the *corpus delicti* beyond a reasonable doubt; all that is required is sufficient proof to warrant a reasonable inference that the crime was committed. The evidence presented showed a minor within 300 feet of a school in possession of a large quantity of drugs and cash shortly after school was recessed for the day. We believe this was sufficient to warrant a reasonable inference that appellant had committed the crime charged, and thus the juvenile court did not err in denying the motion to suppress.

The orders of the juvenile court are affirmed.

ROLL, P.J., and HOWARD, J., concur.